PEOPLE v CONN

Docket No. 102348. Submitted March 2, 1988, at Lansing. Decided September 6, 1988.

Bobby Stearling Conn was convicted of first-degree criminal sexual conduct and, on his plea of guilty, of being a habitual offender, Oakland Circuit Court, Norman L. Lippitt, J. The victim was the seven-year-old daughter of his girlfriend, with whom he lived. Defendant appealed, alleging improper comment on defendant's failure to testify, error in the admission of evidence concerning statements made by the victim to her treating physician and ineffective assistance of counsel, who did not advise him of his right to testify.

The Court of Appeals *held:*

1. Absent an objection, appellate review of allegedly improper prosecutorial comment is precluded unless the prejudicial effect of the remarks is so great that it could not have been cured by a timely cautionary instruction. Defendant did not object to the prosecutor's remarks at trial and the remarks were not so prejudicial as to be incurable with a timely instruction.

2. Evidence of a statement of a seven-year-old rape victim to a treating physician that the perpetrator was a member of her household is properly admitted as an exception to the hearsay rule.

3. The court did not err in refusing defendant relief based on his claim of ineffective assistance of counsel. Defendant did not allege that he was unaware of his right to testify and that he would have testified had he known.

Affirmed.

1. CRIMINAL LAW — PROSECUTORIAL COMMENT — PRESERVING QUESTION.

Absent an objection, appellate review of allegedly improper prose-

REFERENCES

Am Jur 2d, Appeal and Error §§ 624 *et seq.*

Am Jur 2d, Evidence §§ 683 *et seq.*

Admissibility of statements made for purposes of medical diagnosis or treatment as hearsay exception under Rule 803(4) of Federal Evidence. 55 ALR Fed 689.

cutorial comment is precluded unless the prejudicial effect of the remarks is so great that it could not have been cured by a timely cautionary instruction.

2. EVIDENCE — HEARSAY — MINORS — RAPE — RULES OF EVIDENCE.

   Evidence of a statement of a seven-year-old rape victim to a treating physician that the perpetrator was a member of her household is properly admitted as an exception to the hearsay rule (MRE 803[4]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Paul J. Fischer,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: SAWYER, P.J., and KELLY and J. J. RASHID,* JJ.

SAWYER, P.J. Defendant was convicted, following a jury trial, of criminal sexual conduct in the first degree. MCL 750.520b; MSA 28.788(2). He thereafter pled guilty to being a habitual offender (second offense). MCL 769.10; MSA 28.1082. Defendant was thereafter sentenced to serve a term of from twenty-five to eighty years in prison. Defendant now appeals and we affirm.

Defendant's CSC conviction arose out of his sexual abuse of the then seven-year-old daughter of his girlfriend, with whom he was residing at the time of the offense. The offense was discovered when the victim was taken to a physician, Dr. Scheinfield, after the victim complained to her mother that her vagina hurt. The victim's mother told her to tell the physician that she was hurt in a fall from a bicycle. Her mother then changed

---

* Circuit judge, sitting on the Court of Appeals by assignment.

her mind and instructed the victim to say that an eighteen-year-old male baby-sitter had sexually abused her. Once in the physician's office, the victim's mother advised her to tell the physician the truth, which the victim proceeded to do. Specifically, the victim told Dr. Scheinfield that the man living at her house was responsible for her injury and described multiple sexual experiences. After leaving the doctor's office, the victim's mother slapped her for saying that defendant had molested her, although the victim had not specifically named defendant.[1]

Dr. Scheinfield testified that he found signs of labial irritation during the examination of the victim and that, after further questioning, the victim told him that she had been involved in vaginal and oral sexual acts and described the insertion of a penis into her vagina.

Defendant first argues that the prosecutor, during closing argument, impermissibly commented upon defendant's decision not to testify. However, defendant did not object at trial. Absent an objection, appellate review is precluded unless the prejudicial effect of the alleged improper remarks by the prosecutor is so great that it could not have been cured by a timely cautionary instruction. *People v Lasenby*, 107 Mich App 462, 467; 309 NW2d 572 (1981). In the case at bar, we do not believe that the statements by the prosecutor, even if improper, were so prejudicial that they could not have been cured by a timely cautionary

[1] The victim's mother was also convicted of crimes arising out of the sexual abuse; specifically, she was convicted as charged of being an accessory after the fact of defendant's criminal sexual conduct and of child cruelty. She was sentenced to serve a prison term of from forty months to five years on the accessory charge and from thirty-two months to four years on the child cruelty charge. The victim's mother originally appealed her convictions, in Docket No. 97513, but her appeal was dismissed by stipulation of the parties prior to submission at oral argument.

instruction. Accordingly, appellate review of this issue is precluded.

Defendant next argues that the trial court erred in admitting hearsay testimony, specifically Dr. Scheinfield's testimony that the victim told him during his examination of her that "the man who lived at her house" was the person who performed various sexual acts on her. The testimony was admitted in the trial court under the medical treatment or diagnosis exception to the hearsay rule contained in MRE 803(4). We believe the trial court correctly analyzed this issue.[2] We begin our analysis with the provision of MRE 803(4):

> (4) Statements made for purposes of medical treatment or medical diagnosis in connection with treatment. Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

This rule has not been extensively analyzed in the context of child sexual abuse cases. However, this Court in *People v Wilkins,* 134 Mich App 39, 43-44; 349 NW2d 815 (1984), looked to federal decisions interpreting the similar federal evidentiary rule in reaching the applicable rule to be applied in Michigan:

---

[2] It merits comment that defendant cannot complain that the trial court did not give sufficient scrutiny to this issue. Not only did the trial court consider the issue in ruling on defendant's motion in limine to suppress such testimony by Dr. Scheinfield, defendant again raised the issue in his motion for new trial. In ruling on the motion for new trial, the trial court issued a written opinion which extensively analyzed the issue. Judge Lippitt clearly devoted a great deal of effort to deciding this issue and stated the basis of his conclusion in an articulate, well-reasoned opinion.

Since there are no Michigan cases on point, we look to the federal rules and decisions for guidance. FRE 803(4) is identical to MRE 803(4), except that FRE 803(4) is broader in that it only restricts the exception to statements "insofar as *reasonably pertinent* to diagnosis or treatment". FRE 803(4). (Emphasis supplied.) In *United States v Iron Shell,* 633 F2d 77 (CA 8, 1980), cert den 450 US 1001; 101 S Ct 1709; 68 L Ed 2d 203 (1981), the Eighth Circuit Court of appeals discussed the application of FRE 803(4) to the testimony of an examining physician which contained a repetition of a nine-year-old victim's description of an assault as related to the physician by the victim. The court stated that there are two independent rationales for the medical treatment exception. The first is that the patient's statements are likely to be reliable because the patient has a strong motivation to tell the truth, as diagnosis and treatment depend in a large part upon what the patient says to the physician. The second rationale is that facts reliable enough to serve as a basis for medical diagnosis are also reliable enough to escape the hearsay proscription. Since life and death decisions are made by physicians in reliance on the facts related by the patient, they should have sufficient trustworthiness to be admissible in a court of law. Consequently, the court in *Iron Shell* fashioned a two-part test to determine whether statements were "reasonably pertinent" to diagnosis or treatment. First, the declarant's motive must be consistent with the purpose of the rule; and second, it must be reasonable for the physician to rely on the information in diagnosis and treatment. *Iron Shell, supra,* pp 83-84. On the basis of this two-part test, the court held that the statements made to the physician were reasonably pertinent to the diagnosis and treatment. *Iron Shell, supra,* pp 84-85.

The *Wilkins* rule has been applied by at least two other panels of this Court in termination of parental rights cases. In *In re Rinesmith,* 144

Mich App 475; 376 NW2d 139 (1985), this Court held that testimony by the physician as to the victim's statements to him that her father had sexually abused her were admissible. The *Rinesmith* case centered on the issue of whether the statements were reasonably necessary to make a diagnosis and treatment. This Court concluded that they were, noting that the victim looked to the physician to alleviate her immediate physical pain and to intervene and prevent the pain from recurring in the future. Thus, with the revelation that the victim's injury was caused by sexual abuse, the fact that the abuse was inflicted by a member of the victim's family was reasonably necessary to obtain relief.

In the other termination case, *In re Freiburger,* 153 Mich App 251; 395 NW2d 300 (1986), this Court found that statements by a victim to a psychiatric social worker were admissible under MRE 803(4). The Court reasoned that, since the victim suffered sexual abuse, the statements concerning the person who inflicted that abuse were reasonably necessary for treatment and diagnosis of the resulting emotional and behavior problems.

Of course, the identity of the child abuser is more clearly necessary in the treatment of the emotional or mental problems arising from the abuse than it is in the treatment of the physical injuries. That is, it is clearly necessary for a mental health professional to know the identity of the child abuser in order to adequately deal with the victim's mental and emotional injuries arising out of the abuse. However, while it can be seen that the physician attending to the victim's physical injuries needs to know the physical causation of the injuries (such as sexual penetration), it would seem at first blush unnecessary for the physician to know the identity of the abuser.

However, the necessity of knowing the identity of the abuser in a child sexual abuse case by the attending physician in order to properly treat the victim becomes clearer upon further study.

In addition to the Eighth Circuit's decision in *Iron Shell, supra,* upon which this Court relied in *Wilkins, supra,* we find great guidance, as did the trial court, in the Eighth Circuit's subsequent decision in *United States v Renville,* 779 F2d 430 (CA 8, 1985). In considering the admissibility of statements by the victim, the defendant's step-daughter, the court in *Renville, supra* at 436-438, recognized that a physician's obligation in treating a child abuse victim goes beyond the mere repair of physical wounds:

> The court in *Iron Shell* and the Advisory Committee used words of generality, however, not exclusion. *Iron Shell,* 633 F2d at 84 (statements of fault "would seldom" be pertinent); Fed R Evid 803(4) advisory committee notes (statements of fault "not ordinarily admissible"). We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of rule 803(4) that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment.
>
> Statements of this kind differ from the statements of fault identified by the Rules Advisory Committee and properly excluded under our past decisions in a crucial way: they are reasonably relied on by a physician in treatment or diagnosis. First, child abuse involves more than physical injury; the physician must be attentive to treating the emotional and psychological injuries which accompany this crime. See *People v Oldsen,* 697 P2d 787, 788 (Colo App, 1984), cert granted (Colo,

April 1, 1985); *People v Wilkins,* 134 Mich App 39, 43-44; 349 NW2d 815, 817 (1984); *Goldade v State,* 674 P2d 721, 725 (Wyo, 1983), cert denied 467 US 1253; 104 S Ct 3539; 82 L Ed 2d 844 (1984). The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser. The general rule banning statements of fault is premised on the assumption that the injury is purely somatic. This is evident from the examples put forth by the courts and commentators discussing the rule. [Examples omitted.] In each example, the medical treatment contemplated was restricted to the physical injuries of the victim; there is no psychological component of treatment which could relate to the identity of the individual at fault. Furthermore, in each example the statement of fault is not relevant to prevention of recurrence of the injury. Sexual abuse of children at home presents a wholly different situation.

Second, physicians have an obligation, imposed by state law, to prevent an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse. This obligation is most immediate where the abuser is a member of the victim's household, as in the present case. Information that the abuser is a member of the household is therefore "reasonably pertinent" to a course of treatment which includes removing the child from the home.

The defendant contends that our decision in *Iron Shell* holds to the contrary. In *Iron Shell,* this court held that rule 803(4) did not bar the testimony of a physician reciting statements by a nine year old child abuse victim where the child's statements were related to her physical condition and a detailed chronology of the sexual assault, but did not touch on the identity of the assaulting individual. 633 F2d at 84. The defendant here seizes on language in the opinion, discussed above, that statements by the victim of "who assaulted her . . . , would seldom, if ever," be admissible. *Id.* However, the court in *Iron Shell* considered only

the admissibility of a child abuse victim's statements relating the course of events and the conduct of the assailant during the attack; the court did not purport to decide whether statements of fault by child abuse victims are admissible under rule 803(4). Moreover, the defendant in *Iron Shell* was not a member of the victim's household, *id.* at 80-81, and statements relating to identity therefore were not reasonably pertinent to the physician's obligation to insure that the child be removed from an environment in which she was vulnerable to recurring abuse.

We therefore believe that statements of identity to a physician by a child sexually abused by a family member are of a type physicians reasonably rely on in composing a diagnosis and course of treatment. Admission of these statements, therefore, is fully consistent with the rationale underlying the second component of the *Iron Shell* test.

Statements of identity in this unique context also meet the first part of the *Iron Shell* test, which focuses on the declarant's motivation for giving the information. *Id.* at 83-84. As we discussed above, this component reflects the premise underlying the rule that the patient's selfish interest in receiving proper treatment guarantees the trustworthiness of the statements. *Id.* Statements of fault traditionally have failed to meet this criterion. Ordinarily, when an individual identifies the person responsible for his injuries or condition, he does so without reasonable expectation that the information will facilitate treatment.

However, this conclusion rests on the obvious assumption that the declarant is responding under the impression that he is being asked to make an accusation that is not relevant to the physician's diagnosis or treatment. This assumption does not hold where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding. In such circumstances, the victim's motivation to speak truthfully is the same as that which insures relia-

bility when he recounts the chronology of events or details symptoms of somatic distress. [Emphasis in original.]

In concluding that the *Renville* decision should be applied in Michigan, the trial court in the case at bar opined as follows:

The sexual abuse and exploitation of the most vulnerable segment of our population is, without a question, the most contemptible, deplorable, morally reprehensible, and antipathetic situation tragically faced by our society today. However, as the Court of Appeals has recognized, "sexual abuse by a member of the victim's family poses *unique* problems, and so there is no way to adequately diagnose and treat the impact of the sexual abuse unless it is known that the abuser was a family member." *In re Freiburger, supra,* p 258. Treatment of the surface injury alone is, at best, insufficient treatment in light of the fact that sexual abuse of children, without a question, leaves more serious injuries than those visible to the naked eye —the psychological injuries. It is pointless to treat a surface injury only to allow the child to return to the noxious environment only to again be exposed to further injury.

Cognizant of the importance of preventing the recurrence of such abuse, the Michigan Legislature has enacted the Child Protection Law, MCL 722.621 *et seq.*; MSA 25.248(1) *et seq.*, which imposes an obligation upon physicians, among others, who have "reasonable cause to suspect child abuse or neglect" to immediately report such abuse to the department of social services. MCL 722.623(1); MSA 25.248(3)(3). Accordingly, in light of the statute, the identity of the perpetrator is reasonably pertinent to diagnosis or treatment.

Therefore, where, as here, the perpetrator of the sexual offense is a member of the victim's household, statements regarding his identity are, in fact, reasonably pertinent to diagnosis and treatment. This Court finds *Renville,* approach [sic] is the

enlightened one inasmuch as it takes into account the fact that treatment of the sexually abused child not only entails treatment of surface injuries, but importantly, treatment of the psychological aspects and protection from the recurrence of such abuse. As the People correctly maintain, *Iron Shell* does not conflict with *Renville* since it merely expands FRE 803(4) into an area not foreclosed; Inasmuch as *Wilkins* derives from *Iron Shell,* the *Renville* decision is likewise applicable in Michigan. [Emphasis supplied by trial court.]

We concur.

To summarize, defendant correctly points out that the attending physician did not need to know the identity of the person who performed the sexual acts on the victim in order to treat the victim's physical injuries. However, defendant's argument fails in that it is based upon the assumption that the physician's treatment ends with attending to the present physical injuries. Rather, as discussed above, the physician's treatment goes beyond stitching and bandaging the wounds to include stopping the infliction of further injury. Where the physician has been informed that the source of those injuries is a person living in the victim's household, it is necessary at that point for the physician to contact the appropriate authorities to intervene and remove the child from the household in order to prevent further abuse. Indeed, we doubt that it can be said that a physician has fully treated the victim of child sexual abuse if he has merely placed a bandage on the wound and sent the child back to suffer further injuries at the hands of her abuser.

For the above reasons, we conclude that the trial court correctly decided that the victim's statements to the attending physician under the circumstances in the case at bar were admissible.

Finally, defendant argues that he was denied the effective assistance of counsel because counsel did not advise him of his absolute right to testify on his own behalf when advising defendant not to testify. We disagree.

The issue of ineffective assistance of counsel was first raised during defendant's motion for new trial. The trial court rejected defendant's argument that counsel was ineffective in advising him not to testify without informing defendant that he had an absolute right to testify as well as rejecting defendant's request for an evidentiary hearing on the issue. In denying defendant's motion, the trial court quoted the following passage from *People v Simmons,* 140 Mich App 681, 685-686; 364 NW2d 783 (1985):

> As for counsel's alleged failure to tell the defendant of his right to testify, it is noteworthy that defendant fails to allege that he was ignorant of that right. Even assuming he was unaware, defendant does not allege that he would have testified if presented with the option. Finally, there is no indication of what his testimony would have been. We presume "that counsel's conduct falls within the wide range of reasonable professional assistance". *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674, 694 (1984).

The trial court then went on to opine as follows:

> Similarly, this Court declines to grant Defendant an evidentiary hearing or find that the allegations rise to the level of ineffective assistance of counsel because, Defendant fails to indicate that he was ignorant of that right and, even assuming he was unaware of it, he does not allege he would have testified presented with the option. He merely indicates that there is no reason why he should have been precluded from taking the stand inas-

much as he only had a prior manslaughter convic-
tion.

On appeal, defendant does allege that he desired
to take the stand in order to deny the accusations.
Defendant does not suggest that he had other
testimony to offer other than his denial. Firstly,
we note that defendant should have informed the
trial court at the hearing on the motion for new
trial that he had desired to testify and the nature
of the testimony he would have given as that may
have affected the trial court's decision. In any
event, defendant has not persuaded us that the
trial court erred in rejecting his claim of ineffec-
tive assistance of counsel. For that matter, defen-
dant has not even persuaded us that defense coun-
sel made a serious mistake which involved defen-
dant's not taking the stand.

Affirmed.

KELLY, J., concurred in the result.