16 F.3d 1218
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Bobby Stearling CONN, Petitioner-Appellant,
v.
H. Gary WELLS, Respondent-Appellee.
 No. 93-1313.
 United States Court of Appeals, Sixth Circuit.
 Feb. 1, 1994.
 
 Before: MERRITT, Chief Judge, and NELSON and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The petitioner, who was convicted in a Michigan trial court on a criminal sexual conduct charge, appeals from a judgment denying his application for a writ of habeas corpus. Throughout his state court appeals and again in this habeas action, he has asserted that his conviction was tainted by three errors of constitutional dimension: (1) improper references by the prosecutor in closing argument to "uncontroverted" evidence; (2) improper admission of hearsay statements that tended to identify the petitioner as the offender; and (3) ineffective assistance of counsel, based primarily on trial counsel's failure to advise the petitioner that he had a right to testify in his own defense. Finding nothing that warrants the exercise of federal habeas authority, we shall affirm the denial of the writ.
 
 I.
 
 2
 Bobby Stearling Conn, the petitioner in this case, was charged with criminal sexual conduct in the first degree. At trial, evidence was presented to show that he performed sexual acts on the seven-year-old daughter of a woman with whom he was living at the time. The evidence consisted primarily of the testimony of the child and of two physicians who examined her. One of those physicians, Dr. Scheinfield, testified that during his exam (which occurred several months prior to the particular acts for which the petitioner was charged) the child identified her molester as a man living in her house. Other evidence identified the petitioner as the man who lived in the apartment occupied by the child and her mother.
 
 
 3
 Following his conviction, the petitioner pleaded guilty to an habitual offender charge based on a prior Michigan conviction for manslaughter. He was sentenced to imprisonment for 25 to 80 years. A motion for new trial was denied, and the Michigan Court of Appeals affirmed the conviction. People v. Conn, 171 Mich.App. 55, 429 N.W.2d 839 (1988).
 
 
 4
 Leave to appeal was granted by the Michigan Supreme Court. After an intervening remand for reconsideration and a second appeal, the Supreme Court allowed the conviction to stand. People v. Meeboer, 439 Mich. 310, 484 N.W.2d 621 (1992). The petitioner then filed the instant habeas petition pursuant to 28 U.S.C. Sec. 2254. The district court denied relief, and this appeal followed.
 
 II.
 
 5
 The prosecutor stated three times during closing argument that the evidence was "uncontroverted" that the petitioner had committed the crime. On the first such occasion the prosecutor said this:
 
 
 6
 "Ladies and gentlemen, this case established through the testimony of [the child] exactly who committed that crime against her. The evidence in this case as to the Defendant Bobby Conn is uncontroverted."
 
 
 7
 In his rebuttal argument in closing the prosecutor further stated:
 
 
 8
 "The People have brought forward testimony in this case that has gone uncontroverted and have proven the Defendant guilty beyond a reasonable doubt.
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 Ladies and gentlemen, that child testified truthfully. If you find that the testimony that she testified to, the evidence uncontroverted is what happened, [sic] there is no reasonable doubt in your mind...."
 
 
 12
 Mr. Conn argues that these statements constituted forbidden commentary on his failure to testify, depriving him of the right against self-incrimination secured by the Fifth and Fourteenth Amendments. See Griffin v. California, 380 U.S. 609, 615 (1965).
 
 
 13
 The petitioner made no contemporaneous objection to any of the three statements. The Michigan Court of Appeals held that because of the failure to object, "appellate review is precluded unless the prejudicial effect of the alleged improper remarks by the prosecutor is so great that it could not have been cured by a timely cautionary instruction." Conn, 171 Mich.App. at 57, 429 N.W.2d at 841 (citing People v. Lasenby, 107 Mich.App. 462, 309 N.W.2d 572 (1981)). The court further said "we do not believe that the statements by the prosecutor, even if improper, were so prejudicial that they could not have been cured by a timely cautionary instruction. Accordingly, appellate review of this issue is precluded." Conn, 171 Mich.App. at 57-58, 429 N.W.2d at 841. This holding was not disturbed in the later proceedings before the Michigan Supreme Court.
 
 
 14
 Where the state court that has last spoken on an issue has rested its decision on an independent and adequate state procedural ground, the matter is immune from review in a federal habeas action absent a showing of "cause" for failure to conform to the procedure and resultant "prejudice." Wainwright v. Sykes, 433 U.S. 72, 87 (1977). As stated in Coleman v. Thompson, 111 S.Ct. 2546, 2565 (1991),
 
 
 15
 "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."
 
 
 16
 The petitioner argues that his is not a case of procedural default because the Michigan state courts necessarily made a federal constitutional determination in finding the remark not so prejudicial as to excuse the violation of the contemporaneous objection rule. We do not believe, however, that the petitioner is excused from the need to demonstrate cause and prejudice in this instance. In Paprocki v. Foltz, 869 F.2d 281 (6th Cir.1989), a federal habeas action, this court described the previous state court proceedings, in which the defendant had failed to object to the omission of certain jury instructions. On appeal, the Michigan appellate court affirmed the conviction based on the defendant's failure to object, and because affirmance would not result in manifest injustice. Id. at 284 (citing the Michigan Court of Appeals). In the federal habeas action, the petitioner argued, as does the petitioner in this case, that the Michigan Court of Appeals had erred in going beyond a procedural determination and made a substantive one by considering whether a manifest injustice would occur. We rejected his argument, explaining that:
 
 
 17
 "[w]e would be loath to adopt an exception to the 'cause and prejudice' rule that would discourage state appellate courts from undertaking the sort of inquiry conducted by the Michigan court, and we do not believe that the state court's explanation of why the jury instructions resulted in no manifest injustice can fairly be said to have constituted a waiver of the procedural default." Id. at 285.
 
 
 18
 Proceeding beyond that issue, we concluded in Paprocki that in any event the error complained of was not one that compelled habeas relief. Id.
 
 
 19
 Here, as in Paprocki, the procedural default was not waived by the state court. The Michigan court of appeals specifically noted that the prosecutor's statements, even if improper, were not so prejudicial that they could not have been cured by a timely cautionary instruction. This is similar to the consideration undertaken by the Michigan courts in Paprocki, and it did not constitute a waiver of the contemporaneous objection rule.
 
 
 20
 The petitioner also suggests that cause is demonstrated because the Michigan courts do not consistently apply the contemporaneous objection rule in every case. This conclusion is not borne out by the cases on which the petitioner relies, however. Those cases represent situations in which the Michigan courts decided that review of the claimed errors was necessary despite the procedural rule. Rather than demonstrating an inconsistent application of the procedural bar, the cases define a limited area in which the procedural bar is waived. It is entirely appropriate that we defer, in the case at bar, to Michigan's application of its own procedural rule. See McBee v. Grant, 763 F.2d 811, 815 (6th Cir.1985).
 
 
 21
 The petitioner further suggests that he is excused from showing cause for failure to object because the trial court was obliged to give a corrective instruction sua sponte. We disagree. This is not a case in which the trial court interfered with the petitioner's ability to object or compounded any error by repeating the statement. See Hearn v. Mintzes, 708 F.2d 1072 (6th Cir.1983). Accordingly, and given the relatively brief nature of the remarks, we do not believe that the trial court was under any obligation to give a curative instruction sua sponte. We are strengthened in this conclusion by the fact that the jury instructions did include the following:
 
 
 22
 "Every Defendant in a criminal case has the absolute right not to testify. The Defendant has no obligation to testify or to prove his innocence in any manner. You are not permitted to consider his silence in your deliberations and his silence must not influence your verdict in any manner whatsoever."
 
 
 23
 This instruction followed closely on the heels of the prosecutor's rebuttal remarks in which two of the three uses of "uncontroverted" occurred.
 
 III.
 
 24
 With respect to Dr. Scheinfield's testimony, the petitioner's argument is two-fold. First, he claims that he was denied due process by the admission of the testimony into evidence, and, secondly, he argues that the Michigan Supreme Court violated his confrontation rights under the Sixth Amendment by going outside the record to support its ruling on the admissibility of evidence.
 
 
 25
 Dr. Scheinfield examined the complainant in February of 1984, several months before the acts of sexual conduct with which the petitioner was charged. She complained of pelvic pain. During his examination, Dr. Scheinfield found labial irritation. When asked about it, the child first stated that she had fallen on a bike, but after further questioning she indicated that she had been involved in sexual acts and described the insertion of a penis into her vagina. When asked who had done this, she first named an 18-year-old male babysitter. After her "mother said something to her," she then described the offender as "a man that was living in the home with her and someone that she had multiple sexual experiences with."
 
 
 26
 The child testified that she lied at first to Dr. Scheinfield because her mother had told her to. Later, she stated that she identified the petitioner to Dr. Scheinfield "[b]ecause my mother said it was okay to tell the truth."
 
 
 27
 Dr. Scheinfield's testimony as to what the child told him was admitted under Rule 803(4), Michigan Rules of Evidence, which excludes from the hearsay rule:
 
 
 28
 "Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment."
 
 
 29
 Ultimately, after considering this case with two other cases, the Michigan Supreme Court upheld admission of the testimony. The Michigan court set out ten factors relative to the trustworthiness of identity statements made to examining physicians in cases of sexual abuse, including: (1) age and maturity of the declarant; (2) manner in which statements were elicited; e.g., leading questions that could undermine trustworthiness; (3) manner in which the statements are phrased, noting that childlike terminology could be evidence of genuineness; (4) use of terminology unexpected of a child of similar age; (5) who initiated the exam, noting that a prosecutor's exam may not be intended for medical diagnosis and treatment; (6) time of the exam in relation to the assault; (7) time of the exam in relation to trial; (8) type of exam, i.e., physical vs. psychological; (9) relation of the declarant to the persons identified, which could serve as evidence that the child did not make a mistaken identification; and (10) existence of a motive to fabricate or lack of such motive. People v. Meeboer, 439 Mich. at 324-25, 484 N.W.2d at 627. The court concluded in light of these factors that the statements made to Dr. Scheinfield were sufficiently reliable. The court further concluded that the statements were reasonably necessary to Dr. Scheinfield's treatment and diagnosis in that he was concerned with alerting the necessary authorities and, in fact, did so. 439 Mich. at 328-29, 484 N.W.2d at 628-29.
 
 
 30
 In the instant habeas proceeding the district court initially found that the petitioner had not presented the issue to the state courts as a federal constitutional issue. The court noted, however, that were Mr. Conn to resubmit his argument to the Michigan courts, framing it as a constitutional issue, the Michigan courts would be unlikely to grant relief. Therefore, "[i]n the interest of finality," the district court proceeded to consider the merits of the petitioner's claim.
 
 
 31
 The Michigan Supreme Court did say that "under the Confrontation Clause, some evidence may be excluded that would otherwise be admissible under an exception to the hearsay rule." Meeboer, 439 Mich. at 323-24, 484 N.W.2d at 627 (citing Idaho v. Wright, 497 U.S. 805 (1990)). The court concluded, however, that "there is no risk in the present cases of violating the Confrontation Clause guarantees, because the admissibility of the hearsay statements is analyzed under MRE 803(4), an established hearsay exception." Id. The court further stated that "we believe that it is sufficient to establish the trustworthiness of a child's statement through an analysis which is not more demanding than required under the Confrontation Clause." Id. Given this statement, we agree with the district court's conclusion that presentation of the constitutional claims to the state court would be futile.
 
 
 32
 The petitioner argues he was denied a fundamentally fair trial by the admission of Dr. Scheinfield's testimony because of the child's inconsistent statements. These credibility concerns were pointed out in cross-examination, however, and no limitations were placed on the cross-examination.
 
 
 33
 It is clear that the state courts decided the issue of Dr. Scheinfield's testimony as an evidentiary question. An error in state law as to evidentiary questions does not rise to the level of a constitutional violation unless it results in the denial of fundamental fairness. Waters v. Kassulke, 916 F.2d 329, 335 (6th Cir.1990); Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir.1988). Given the child's independent identification of the petitioner at trial, her availability for cross-examination, and the absence of limitation on that cross-examination, we cannot conclude that Dr. Scheinfield's testimony rendered the trial so fundamentally unfair as to require us to disturb the conviction.
 
 
 34
 The petitioner also argues that the Michigan Supreme Court violated his confrontation rights after his conviction by relying on out-of-record evidence to determine that the child's statement to Dr. Scheinfield was trustworthy and therefore admissible. This occurred, says the petitioner, because the trial proceeded before two juries. One jury was convened to hear the petitioner's case, and the other was convened to try the mother, who was charged with being an accessary after the fact and with cruelty to children. The two juries were moved in and out of the courtroom, depending on the testifying witness. The child and Dr. Scheinfield testified twice, once before the petitioner's jury and once before the mother's jury.
 
 
 35
 The petitioner submits that the Michigan Supreme Court relied on testimony adduced at the trial of the mother--at which the petitioner cannot be deemed to have been present--in support of its evidentiary decision. The pertinent language of the court's opinion is this:
 
 
 36
 "The initial motive to fabricate was in response to the mother's plan to protect the defendant from criminal prosecution. Despite initial conformity with that plan, the victim named the defendant as her assailant when told to tell the truth." Meeboer, 439 Mich. at 332, 484 N.W.2d at 630.
 
 
 37
 Contrary to the petitioner's argument, this conclusion finds support in testimony given at the petitioner's trial. When the child was asked why she changed her statement to Dr. Scheinfield regarding the identity of the offender, she answered--without any objection by the petitioner--"[b]ecause my mother said it was okay to tell the truth." She confirmed in later testimony in the petitioner's trial that she incorrectly identified others than the petitioner as the offender "[b]ecause my mother told me to say [so]." This testimony adequately supports the conclusion quoted above. The Michigan Supreme Court did not violate the petitioner's confrontation rights in reaching its decision on the state hearsay question.
 
 IV.
 
 38
 The petitioner contends, finally, that he was entitled to an evidentiary hearing on the claim that his constitutional rights were violated because his counsel failed to advise him that he had a right to testify in his own defense. In denying the petitioner's motion for a new trial, the trial court first noted that counsel's trial strategy in not putting the petitioner on the stand could not be ineffective assistance. In view of the petitioner's prior manslaughter conviction, keeping him off the stand was "within the wide range of reasonable professional assistance." The trial court declined
 
 
 39
 "to grant [the petitioner] an evidentiary hearing or find that the allegations rise to the level of ineffective assistance of counsel because [the petitioner] fails to indicate that he was ignorant of that right and, even assuming he was unaware of it, he does not allege he would have testified presented with the option. He merely indicates that there is no reason why he should have been precluded from taking the stand inasmuch as he only had a prior manslaughter conviction." People v. Conn, No. CR 86 73574 FC, Opinion and Order Denying New Trial at 14-15, cited in People v. Conn, 171 Mich.App. at 66-67, 429 N.W.2d at 845.
 
 
 40
 The Michigan Court of Appeals denied a motion to remand for an evidentiary hearing on the issue because there appeared to be no error in denying such a hearing. Amplifying on this holding in its published opinion, the court noted that the defendant had not advised the trial court of the nature of testimony he would have offered. The court found no ineffective assistance, nor "even ... a serious mistake which involved defendant's not taking the stand." Conn, 171 Mich.App. at 67, 429 N.W.2d at 845.
 
 
 41
 In denying habeas relief, the district court noted the strong presumption that counsel's assistance was effective. See Strickland v. Washington, 466 U.S. 668 (1984). The court then observed that failure to develop necessary facts in a state-court proceeding is subject to the cause-and-prejudice test, as stated in Keeney v. Tamayo-Reyes, 112 S.Ct. 1715 (1992). The district court found no cause for the petitioner's failure properly to assert his ineffective assistance of counsel claim before the state court and found further that no miscarriage of justice would result from the absence of an evidentiary hearing. The fact that trial counsel rendered reasonable assistance can be inferred from the record, concluded the district court, and is evidenced by various pretrial motions, objections at trial, cross-examination, and closing argument. The district court pointed out that immediately after his conviction, when the petitioner pleaded guilty to the habitual offender charge, he indicated to the trial court he understood he had a right to testify and that he was waiving that right. This led the district court to believe that the petitioner knew he had a right to testify at trial. We find no flaw in the district court's reasoning.
 
 
 42
 The district court's judgment is AFFIRMED.