PEOPLE v MEEBOER (AFTER REMAND)

· PEOPLE v CRAFT

PEOPLE v CONN (AFTER REMAND)

Docket Nos. 88115, 88565, 88931. Argued October 9, 1991 (Calendar
Nos. 9-11). Decided May 5, 1992. Rehearing denied in *Conn,
post*, 1242.

Douglas E. Meeboer was convicted by a jury in the Genesee
Circuit Court, Judith A. Fullerton, J., of first-degree criminal
sexual conduct involving a six-year-old child. The Court of
Appeals, GRIBBS, P.J., and SULLIVAN, J. (W. J. GIOVAN, J.,
concurring), affirmed in an unpublished opinion per curiam,
holding that MRE 803(4) permits admission as substantive
evidence of statements by a complainant to an attending physi-
cian relating to the identification of an assailant as being
necessary for the diagnosis and treatment of a child sexual
assault victim (Docket No. 97072). The Supreme Court re-
manded the case to the Court of Appeals in light of *People v
LaLone,* 432 Mich 103 (1989). 432 Mich 932 (1989). On remand,
the Court of Appeals, GRIBBS, P.J., and GRIFFIN, J. (SULLIVAN,
J., dissenting), affirmed (Docket No. 119408). The defendant
appeals.

Theodore R. Craft was convicted by a jury in the Berrien Circuit
Court, Zoe S. Burkholz, J., of first-degree criminal sexual con-
duct involving his four-year-old stepdaughter. The Court of
Appeals, MAHER, P.J., and D. E. HOLBROOK, JR., J. (SAWYER, J.,
dissenting), reversed in an unpublished opinion per curiam,
holding, on the basis of *LaLone,* that testimony by attending
physicians regarding the complainant's identity of the defen-
dant was inadmissible hearsay, requiring a new trial (Docket
No. 108572). The people appeal.

Bobby S. Conn was convicted by a jury in the Oakland Circuit
Court, Norman L. Lippitt, J., of first-degree criminal sexual

REFERENCES

Am Jur 2d, Evidence §§ 496, 683, 686; Expert and Opinion Evidence
§ 255; Infants § 17.5.

Admissibility of physician's testimony as to patient's statements or
declarations, other than res gestae, during medical examination.
37 ALR3d 778.

conduct involving a seven-year-old child. The Court of Appeals, SAWYER, P.J., and MICHAEL J. KELLY and J. J. RASHID, JJ., affirmed, holding that MRE 803(4) was properly applied because the statements made by the complainant to attending physicians were reasonably necessary to afford complete medical treatment (Docket No. 102348). The Supreme Court remanded the case to the Court of Appeals in light of *LaLone*. 432 Mich 916 (1989). On remand, the Court of Appeals, MICHAEL J. KELLY and DOCTOROFF, JJ. (SAWYER, P.J., dissenting), reversed (Docket No. 118777). The people appeal.

In an opinion by Justice RILEY, joined by Justices BOYLE, GRIFFIN, and MALLETT, the Supreme Court *held:*

Neither the rationale supporting the medical treatment exception to the hearsay rule, MRE 803(4), nor *People v LaLone*, 432 Mich 103 (1989), requires the exclusion of all statements made to treating medical health care providers by victims of child sexual abuse who identify their assailants.

1. Exceptions to the hearsay rule are justified by the belief that the hearsay statements are both necessary and inherently trustworthy. In order to be admitted under MRE 803(4), a statement must have been made for purposes of medical treatment or diagnosis in connection with the treatment, and must describe medical history, past or present symptoms, pain or sensations, or the inception or general character of the cause or external source of injury. Traditionally, the rationale supporting admission of statements under MRE 803(4) is the existence of the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and the reasonable necessity of such statements to the diagnosis and treatment of the patient. In the case of a child, the trustworthiness of a statement can be established sufficiently to support application of MRE 803(4).

2. Inquiry into the application of MRE 803(4) to the out-of-court statements of a child victim of sexual abuse to a physician during a physical examination should consider the totality of the circumstances surrounding their declaration, including the age and maturity of the declarant, the manner in which the statements are elicited and phrased, use of terminology unexpected of a child of similar age, the person who initiated the examination, its timing in relation to the assault and the trial, the type of examination, the relation of the declarant to the person identified, and the existence or lack of motive to fabricate. The reliability of such statements is strengthened when supported by other evidence such as corroborating physical evidence of an assault, the fact that the person identified as

the assailant had opportunity to commit the assault, and resulting diagnosis and treatment. Even where it is not apparent that the child understood that the statements must be truthful in order to receive proper care, an analysis of the available evidence, consistent with *LaLone,* can support application of MRE 803(4). It is because an understanding to tell the truth may not be as apparent in children of tender years as it is with adults, that investigation into the circumstances surrounding the making of hearsay statements is required to establish whether a child understood the need to be truthful to a physician.

3. In order to ensure reliability of out-of-court statements of identification, they must be reasonably necessary to diagnosis and treatment. The purpose of statements identifying the assailant need not be merely to establish fault or to provide for social disposition of the child. Statements must be specific enough to allow identification of the external source of injury. Identification can be as important to the health of the child as treatment of the physical injuries that are apparent to the physician, such as in the case of sexually transmitted diseases, pregnancy and related problems, and acquired immune deficiency syndrome. Cases of sexual abuse involve medical, physical, developmental, and psychological components, all of which require diagnosis and treatment. Disclosure of the assailant's identity also refers to the injury itself; it is part of the pain experienced by the victim. The identity of the assailant should be considered part of the physician's choice for diagnosis and treatment, allowing the physician to structure the examination and questions to the exact type of trauma the child recently experienced. With regard to psychological trauma, a medical health care provider must know the identity of the assailant in order to prescribe the manner of treatment, especially where the abuser is a member of the child's household, and whether the child will be returning to an abusive home, not merely for social disposition of the child, but rather to indicate whether the child will have the opportunity to heal once released from the hospital.

4. In *Conn* and *Meeboer* sufficient evidence was introduced in support of the reliability of the hearsay statements and the reasonable necessity of the assailants' identification to the victims' medical diagnosis and treatment to allow the application of MRE 803(4). In *Craft,* sufficient evidence was not presented to support admission of the child's identification.

*Meeboer* and *Craft* affirmed;

*Conn* reversed.

Justice BRICKLEY, joined by Chief Justice CAVANAGH and

Justice LEVIN, dissenting, stated that in determining whether statements made to an attending physician by a declarant with diminished capacity, such as a child of tender years, who was a victim of criminal sexual assault, regarding the identity of the assailant may be admitted under MRE 803(4) as an exception to the hearsay rule, a trial court should be certain that, at the time the statements were made, the declarant was able to make the necessary cognitive connection motivated by self-interest between communicating accurate and truthful information to the medical care provider and receiving proper medical treatment or diagnosis in connection with the treatment. Absent that connection, the self-interest motivation policy rationale underlying the rule collapses, rendering the exception inapplicable. Thus, the party seeking admission of such statements should have the burden of establishing the self-interest motivation factor. The burden would become more difficult as the age of a declarant decreases.

In these cases, the statements made by each of the complainants to the medical care providers were made in connection with the rendering of medical treatment or diagnosis. Each complainant was under ten years of age at the time the statement was made, and thus each prosecutor would be required to establish sufficiently that each declarant was capable of making the necessary cognitive connection to possess the self-interest motivation factor required under MRE 803(4). On the basis of the circumstances surrounding the giving of each declaration, there was insufficient evidence to find the presence of a cognitive connection. Thus, admission of the statements under MRE 803(4) is precluded.

181 Mich App 365; 449 NW2d 124 (1989) affirmed.

182 Mich App 13; 451 NW2d 555 (1990) reversed.

EVIDENCE — HEARSAY — MEDICAL TREATMENT EXCEPTION — CHILD DECLARANTS.

Inquiry into trustworthiness under MRE 803(4) of the out-of-court statements of a child victim of sexual abuse to a medical health care provider during a physical examination should consider the totality of the circumstances surrounding their declaration, including the age and maturity of the declarant, the manner in which the statements are elicited and phrased, use of terminology unexpected of a child of similar age, the person who initiated the examination, its timing in relation to the assault and the trial, the type of examination, the relation of the declarant to the person identified, and the existence or lack of motive to fabricate; the reliability of such statements is strengthened when supported by other evidence such as corrob-

orating physical evidence of an assault, the fact that the person identified as the assailant had opportunity to commit the assault, and the results of diagnosis and treatment; even where it is not apparent that the child understood that the statements must be truthful in order to receive proper care, an analysis of the available evidence can support application of MRE 803(4).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people in *Meeboer.*

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Dennis M. Wiley,* Prosecuting Attorney, and *Mark Sanford,* Assistant Prosecuting Attorney, for the people in *Craft.*

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Robert C. Williams,* Assistant Prosecuting Attorney, for the people in *Conn.*

*Daniel D. Bremer* for defendant Meeboer.

*Ilsa Draznin* for defendant Craft.

*Carl Ziemba* for defendant Conn.

RILEY, J. We consolidated these three cases to determine whether error requiring reversal occurred by the admission of hearsay statements made to medical personnel pursuant to the hearsay exception of MRE 803(4).[1] See 436 Mich 880

---

[1] The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or

(1990). These cases present an opportunity for this Court to clarify the interpretation and application of MRE 803(4) to hearsay statements made to physicians by child victims of sexual abuse.

Because we believe that neither the rationale supporting the medical treatment exception to the hearsay rule, MRE 803(4), nor our decision in *LaLone*[2] requires the exclusion of all statements made to treating medical health care providers by the victims of child sexual abuse which identify their assailants, we affirm the convictions in *People v Conn* and *People v Meeboer.* We affirm the Court of Appeals reversal of defendant's conviction in *People v Craft* because we believe the evidence does not sufficiently support admission of the hearsay statements under MRE 803(4).

### FACTUAL BACKGROUND

#### *PEOPLE v CONN*

This case involves an allegation of criminal sexual conduct against defendant, Bobby S. Conn, for allegedly committing acts of sexual intercourse with the complainant who was seven years old at the time. She and her mother were residing in an apartment with defendant at the time of the alleged sexual assault on or about June 1, 1984.

Complainant was taken by her mother to see Dr. Samuel Scheinfield on February 16, 1984, after she complained of pain in her vaginal area.[3] Dr. Scheinfield conducted an examination and was informed by complainant's mother that the child

---

external source thereof insofar as reasonably necessary to such diagnosis and treatment. [MRE 803(4).]

[2] *People v LaLone,* 432 Mich 103; 437 NW2d 611 (1989).

[3] This examination by Dr. Scheinfield predated the alleged sexual assault. Defense objected to such testimony; however, the trial court permitted its admission.

had injured herself.[4] When questioned by the doctor, complainant first indicated she fell upon her bicycle; she then indicated a boy, who was later determined to be approximately eighteen to twenty years old, had been "messing" with her; finally she indicated that defendant had sexually abused her.

Following the doctor's notification to the proper authorities, the police interviewed the defendant. He was subsequently charged with criminal sexual conduct in the first degree. MCL 750.520b(1)(a); MSA 28.788(2)(1)(a).

At trial, the complainant testified that while residing with defendant and her mother, defendant would come into her bedroom dressed in his long johns and attempt to commit acts of sexual intercourse through the opening in the bottom half of his long johns. Complainant admitted she had first informed Dr. Scheinfield that a different individual had "messed" with her, but after her mother told her to be truthful with the doctor, she identified defendant, to whom she referred as her "dad," had "messed" with her.

Defendant did not testify or present any witnesses on his behalf. The jury rendered a guilty verdict against defendant.

Defendant appealed his conviction in the Court of Appeals, arguing that the medical testimony regarding statements made by the complainant to Dr. Scheinfield had been improperly admitted because it constituted inadmissible hearsay and was not within the medical treatment exception, MRE 803(4). The Court of Appeals affirmed the conviction, holding that MRE 803(4) was properly ap-

---

[4] Complainant's mother was charged with and convicted of cruelty to children and as an accessory after the fact to criminal sexual conduct in the first degree. She was tried jointly with defendant Conn; however, each defendant had separate juries.

plied in this instance because the statements made by the complainant to the doctor were reasonably necessary to make complete medical treatment available to this particular victim, namely a child sexual abuse victim.[5] In lieu of granting leave to appeal, this Court remanded the case to the Court of Appeals for reconsideration in light of our decision in *People v LaLone,* 432 Mich 103; 437 NW2d 611 (1989).[6]

Upon remand, the Court of Appeals determined that the statements were admitted in violation of the rationale expressed in *LaLone,* and the defendant's conviction was reversed.[7]

We granted leave to appeal,[8] limited to the issue whether error requiring reversal occurred in the admission, under MRE 803(4), of statements made by the victim to medical personnel. This case was argued and submitted with *People v Meeboer* and *People v Craft.*

### PEOPLE v MEEBOER

The Meeboer family babysat the six-year-old complainant at their residence from January 9 through January 11, 1986. She alleged that during this time period she was sexually penetrated by the twenty-year-old defendant while his mother, father, and sister were absent from the house.

Eleven days after the date of the alleged occurrence, complainant's aunt and uncle were babysitting the complainant at their home and, while bathing complainant, observed swelling and redness around the vaginal area. Following further

---

[5] *People v Conn,* 171 Mich App 55; 429 NW2d 839 (1988).

[6] 432 Mich 916 (1989).

[7] *People v Conn (On Remand),* 182 Mich App 13; 451 NW2d 555 (1990).

[8] 436 Mich 880 (1990).

examination and questioning by her aunt, after initially stating that nobody had done anything to her, complainant disclosed to her aunt and uncle that defendant had "messed" with her.

As soon as complainant's mother was informed of the sexual assault, including the identity of the perpetrator, she notified the police. Complainant was then taken to the hospital, where she was referred to Dr. Karen Bentley, a specialist in the area of child sexual abuse.

Dr. Bentley performed an examination of the complainant on January 22, 1986, which included a physical examination and a recording of the complainant's medical history. The doctor concluded that sexual penetration had occurred. Charges of criminal sexual conduct in the first degree were brought by the Genesee County Prosecuting Attorney's Office against defendant. MCL 750.520b(1)(a); MSA 28.788(2)(1)(a).

The trial court admitted, over objection, the testimony of Dr. Bentley relaying complainant's identification of the defendant as her abuser. The trial court determined that this hearsay evidence was reasonably necessary for purposes of medical treatment or diagnosis and was therefore within the medical treatment exception to the hearsay rule, MRE 803(4). The doctor's brief testimony regarding complainant's statements describing the incident corroborated the testimony rendered by the complainant.

Defendant presented an alibi defense after the prosecution completed its case in chief. He attempted to establish that he was never alone with the complainant for the entire time of January 9 through 11, 1986. The jury found defendant guilty of first-degree criminal sexual conduct on April 16, 1986.

Defendant appealed his conviction in the Court

of Appeals alleging, among other issues, error in the admission of the statements by the complainant to Dr. Bentley regarding the identification of defendant. The Court of Appeals, relying upon a line of Michigan[9] and federal[10] case law, affirmed the finding of the trial court that this type of statement is admissible as substantive evidence pursuant to MRE 803(4) because it is necessary for the diagnosis and treatment of a child sexual assault victim.[11] We remanded the case to the Court of Appeals for reconsideration in light of our decision in *People v LaLone, supra.*[12] Upon remand, the Court of Appeals affirmed its earlier holding, relying on four factors to distinguish the facts of this case from those in *LaLone,* finding that the victim's statements regarding identification were admissible.[13]

We granted defendant's application for leave to appeal.[14]

### PEOPLE v CRAFT

This case involves allegations of criminal sexual conduct against defendant, Theodore R. Craft, for allegedly committing acts of sexual intercourse with the complainant, his four-year-old stepdaughter. It is alleged that on March 25, 1984, the complainant was sexually assaulted in the bedroom of her mother and defendant-stepfather.

Complainant's school teachers noticed that complainant urinated frequently and that she had a

[9] See *People v Wilkins,* 134 Mich App 39; 349 NW2d 815 (1984).

[10] See *United States v Iron Shell,* 633 F2d 77 (CA 8, 1980).

[11] *People v Meeboer,* unpublished opinion per curiam of the Court of Appeals, decided April 6, 1988 (Docket No. 97072).

[12] 432 Mich 932 (1989).

[13] *People v Meeboer (On Remand),* 181 Mich App 365; 449 NW2d 124 (1989).

[14] 436 Mich 880 (1990).

discharge in her underwear. They contacted protective services regarding suspected child abuse. On March 29, 1984, complainant was taken to a clinic by her mother. Dr. David Cooke performed a physical examination resulting in a determination, based upon the vaginal examination and discussion with the complainant, that sexual abuse had occurred. The doctor reported his finding of sexual assault to proper authorities, and the child was removed from defendant's residence and placed in a foster home. During the trial, defense counsel elicited information from the doctor that, in addition to stating that a boy had touched her in the vaginal area while she was at home, complainant had also informed him that a boy who lived in another house had touched her and put something on her vagina. Complainant also made conflicting statements to Dr. Cooke regarding whether it was a boy or girl who committed the alleged acts. All this information was admitted into evidence through the medical hearsay exception, MRE 803(4), and reliance by the trial court on the Court of Appeals decision of *People v Wilkins,* 134 Mich App 39; 349 NW2d 815 (1984).

On May 23, 1984, complainant was taken to Dr. Barrett by the foster mother to determine the source of a discharge she had observed in the complainant's underwear. At this examination, Dr. Barrett found that the vaginal lips of complainant were more gaping than those found in most children her age, although not sufficiently pronounced to indicate sexual activity. The doctor also concluded from her examination that there were no signs of venereal disease and that the hymen had been broken. Dr. Barrett then questioned complainant about whether anybody had done anything to her in the genital area, and thereby learned the identity of defendant. Defendant was

charged with violation of MCL 750.520b(1)(a); MSA 28.788(2)(1)(a) on July 6, 1984.

Dr. Barrett testified at trial regarding the statements made by the complainant identifying defendant as the perpetrator of the sexual assault. The doctor's testimony is consistent with the complainant's in-court version identifying defendant as the assailant and describing defendant's conduct during the assault. The doctor stated that the information regarding the sexual assault, as communicated by the complainant, was related to the rendering of proper medical treatment to the complainant. The trial court permitted the doctor's testimony to be admitted on the basis of the medical treatment exception, MRE 803(4).

Defendant attempted to assert an alibi defense by bringing in witnesses to establish that he was not alone, and had not had an opportunity to be alone, with complainant in his bedroom. Defendant also testified on his own behalf and essentially reaffirmed that he could not have committed the sexual assault without it being in the presence of someone in the household, and he further denied that any sexual assault occurred. The jury returned a guilty verdict on October 17, 1984.

Defendant appealed his conviction in the Court of Appeals, which reversed in a short per curiam opinion.[15] Relying on our decision in *LaLone, supra,* the Court of Appeals held that the testimony by Dr. Barrett was inadmissible hearsay and a new trial was required. The dissent opined that the statements by the victim to the physician had been properly admitted into evidence and cited as authority the dissent in *People v Conn (On Remand)* and *People v Meeboer (On Remand).* This Court granted the prosecutor leave to appeal in

[15] *People v Craft,* unpublished opinion per curiam of the Court of Appeals, decided January 23, 1990 (Docket No. 108572).

order to resolve the apparent conflict between these cases.[16]

## ANALYSIS

### I

Exceptions to the hearsay rule are justified by the belief that the hearsay statements are both necessary and inherently trustworthy. See *Solomon v Shuell,* 435 Mich 104, 119; 457 NW2d 669 (1990); 5 Wigmore, Evidence (Chadbourn rev), § 1420, p 251. Hearsay evidence is not admissible at trial unless within an established exception. See *People v Eady,* 409 Mich 356; 294 NW2d 202 (1980). In order to be admitted under MRE 803(4), a statement must be made for purposes of medical treatment or diagnosis in connection with treatment, and must describe medical history, past or present symptoms, pain or sensations, or the inception or general character of the cause or external source of the injury. Traditionally, further supporting rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient. The trustworthiness of a child's statement can be sufficiently established to support the application of the medical treatment exception. Furthermore, we find that the identification of the assailant is necessary to adequate medical diagnosis and treatment.

#### A. TRUSTWORTHINESS OF STATEMENT

While in cases involving adults a cognitive con-

---

[16] 436 Mich 880 (1990).

nection between speaking the truth to physicians and receiving proper medical care may seem obvious, further analysis of the circumstances surrounding the examination of a child is necessary to determine whether the child understood the need to be truthful to the physician. The United States Supreme Court recently found error in the contention that a child's hearsay statements are presumptively unreliable when the child is found incompetent to testify at trial. *Idaho v Wright,* 497 US 805, —; 110 S Ct 3139, 3151; 111 L Ed 2d 638 (1990). All three children in the instant cases were found competent to testify. Although *Wright* involved a Confrontation Clause challenge against admission of hearsay statements under the residual hearsay exception, it is analogous to the present case because the Court in *Wright* was also required to address the inherent reliability of a child's statements regarding sexual abuse.

In *Wright,* the Court held that no mechanized test should be formulated to determine whether a child's out-of-court statement is reliable. *Id.,* 110 S Ct 3150. Instead, it favored a totality of the circumstances test, citing several state and federal court decisions which highlight certain factors, including the spontaneity and consistent repetition of the statement, the mental state of the declarant, the use of terminology unexpected of a child of similar age, and the lack of motive to fabricate. *Id.* The Court warned against bootstrapping the admission of a hearsay statement on extrinsic or corroborating evidence, holding that the evidence "must possess [an] indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.*[17]

Through analysis under the Confrontation

---

[17] In fact, the Court later reasoned:

Clause, some evidence may be excluded that would otherwise be admissible under an exception to the hearsay rule. *Id.,* 110 S Ct 3146. We conclude that there is no risk in the present cases of violating the Confrontation Clause guarantees, because the admissibility of the hearsay statements is analyzed under MRE 803(4), an established hearsay exception. Moreover, we believe that it is sufficient to establish the trustworthiness of a child's statement through an analysis which is not more demanding than required under the Confrontation Clause. Hearsay statements can be admitted where they sufficiently satisfy the underlying rationale of the applicable exception. A child can have the same selfish treatment-related motive to speak the truth as any adult. See *State v Larson,* 472 NW2d 120 (Minn, 1991). The inquiry into trustworthiness should therefore consider the totality of circumstances surrounding the declaration of the out-of-court statement.

While the inquiry into the trustworthiness of the declarant's statement is just one prong of the analysis under MRE 803(4), it is very important that the understanding to tell the truth to the physician be established. Factors related to trustworthiness guarantees surrounding the actual making of the statement include: (1) the age and maturity of the declarant,[18] (2) the manner in

---

Corroboration of a child's allegations of sexual abuse by medical evidence of abuse, for example, sheds no light on the reliability of the child's allegations regarding the identity of the abuser. [*Id.,* 110 S Ct 3151.]

See also *State v Larson,* 472 NW2d 120, 125 (Minn, 1991) (trustworthiness guarantees must be shown by the totality of the circumstances surrounding the actual making of the statement, not evidence corroborating the statement), and *Huff v White Motor Corp,* 609 F2d 286, 293 (CA 7, 1979) (corroborative evidence is not a consideration relevant to admissibility under the hearsay exceptions).

[18] *United States v Renville,* 779 F2d 430, 441 (CA 8, 1985); *Wright,*

which the statements are elicited (leading ques-
tions may undermine the trustworthiness of a
statement),[19] (3) the manner in which the state-
ments are phrased (childlike terminology may be
evidence of genuineness),[20] (4) use of terminology
unexpected of a child of similar age,[21] (5) who
initiated the examination (prosecutorial initiation
may indicate that the examination was not in-
tended for purposes of medical diagnosis and treat-
ment), (6) the timing of the examination in rela-
tion to the assault (the child is still suffering pain
and distress),[22] (7) the timing of the examination in
relation to the trial (involving the purpose of the
examination), (8) the type of examination (state-
ments made in the course of treatment for psycho-
logical disorders may not be as reliable),[23] (9) the
relation of the declarant to the person identified
(evidence that the child did not mistake the iden-
tity),[24] and (10) the existence of or lack of motive to
fabricate.[25]

Although some courts hold that corroborative
evidence relating to the truth of the out-of-court
statement should not be considered in determining
whether to admit the statement,[26] we believe the
better reasoned view is that the reliability of the

110 S Ct 3150; Myers, Child Witness Law & Practice, § 5.37, p 369;
*Wilkins, supra* at 44.

[19] *Larson, supra* at 125. See also Myers, n 18 *supra* at 365 (sponta-
neity is an important indicator of reliability) and 366 (leading ques-
tions may influence the statement, thus potentially decreasing its
reliability).

[20] *United States v Nick,* 604 F2d 1199, 1204 (CA 9, 1979); *Larson,
supra* at 125.

[21] *Wright,* 110 S Ct 3150; Myers, n 18 *supra* at 367.

[22] *Nick,* n 20 *supra* at 1204.

[23] *LaLone, supra* at 110.

[24] *Nick,* n 20 *supra* at 1204; Myers, n 18 *supra* at 370.

[25] *Larson, supra* at 125; *Wright,* 110 S Ct 3150; Myers, n 18 *supra* at
370.

[26] See *Wright,* 110 S Ct 3150; *Huff,* n 17 *supra* at 293.

hearsay is strengthened when it is supported by other evidence.[27] Corroborating physical evidence of the assault,[28] evidence that the person identified as the assailant had the opportunity to commit the assault,[29] and resulting diagnosis and treatment can support the trustworthiness of the child's statements regarding a sexual assault and aid in the determination whether the statement was made for the purpose of receiving medical care.

While these factors are neither inclusive nor exclusive, an analysis of the available evidence can support an application of MRE 803(4) even where it is not apparent that the child understood that statements must be truthful in order to receive proper care. The contention by the dissent that analysis of these factors incorporates a "substitute" component for the self-interest motivation factor for the application of MRE 803(4), *post*, p 345, misconstrues a major premise of our analysis: that due to the tender years of the hearsay declarants, the understanding to tell the truth may not be as apparent as it is with adults; that investigation into the circumstances surrounding the making of the hearsay statements is required in order to establish whether the child understood the need to be truthful to the physician. The gravamen of our analysis is that hearsay statements must simply be analyzed with more precision because of the young age of the declarants.

Moreover, courts have not asserted a lack of conscious connection as a basis for excluding statements by children that are otherwise admissible under the medical treatment exception. In *LaLone, supra* at 112, we cited with approval the decision in *United States v Iron Shell,* 633 F2d 77 (CA 8,

[27] See Myers, n 18 *supra* at 364.

[28] *Nick,* n 20 *supra* at 1204.

[29] *Id.*

1980),[30] where the court held that statements made by a sexually abused child to the doctor were admissible. The nine-year-old victim's statements related the details of the assault, but not the identity of the assailant. The court found that the victim's motive was consistent with the purpose of FRE 803(4) because there were no facts indicating a motive other than a patient seeking treatment. *Iron Shell, supra* at 84. Moreover, the court found that the young age of the victim mitigated against a finding that the statements were not within the traditional rationale of the rule. *Id.*[31]

We further believe that admission of these statements is consistent with our holding in *LaLone.* Although in *LaLone* we did not analyze the facts according to a totality of circumstances test, upon such analysis it is clear that the declarant's hearsay statement of identification was properly excluded. While under MRE 803(4) a statement does not necessarily have to be made to a medical doctor, the fact that the statement was made to a psychologist "suggests that the statement by the victim in this case may be less reliable than a statement made to a physician." *Id.* at 113.[32] The meeting during which the accusatory statements were made occurred after the complainant told the police of the abuse by the defendant, and after an investigation into those allegations had begun. The complainant was fourteen years old and knew that a case was being prepared against defendant. Furthermore, the complainant had already been re-

[30] See also *People v Hackney,* 183 Mich App 516, 528; 455 NW2d 358 (1990).

[31] See also *Renville,* n 18 *supra* at 441; *Wilkins, supra* at 44. But see *Cassidy v State,* 74 Md App 1; 536 A2d 666 (1988), and Mosteller, *Child sexual abuse and statements for the purpose of medical diagnosis or treatment,* 67 NC L R 257, 293 (1989), stating that the naïveté of children is not a sufficient substitute for the selfish interest foundation to the medical treatment exception.

[32] See also Mosteller, n 31 *supra* at 268.

moved from her home, and in fact it was the Department of Social Services who initiated the examination by the psychologist of the complainant.

We held in *LaLone* that "it has not been shown that the reliability of the complainant's statement reaches the level necessary to fall within MRE 803(4)." *Id.* at 114. We did not, however, create a prophylactic exclusion of all hearsay statements of identification made to physicians. *LaLone* should be interpreted in light of its factual background, and does not preclude admission of statements where an analysis of the totality of the circumstances surrounding the declaration of the hearsay statement supports the underlying requirements of MRE 803(4).

## B. REASONABLE NECESSITY

In order to ensure reliability of out-of-court statements of identification, the statements must be reasonably necessary to diagnosis and treatment. The purpose of statements identifying the assailant need not be merely to establish fault or to provide for social disposition of the child. Identification can be as important to the health of the child as treatment of the physical injuries that are apparent to the physician.

Identification of the assailant may be necessary where the child has contracted a sexually transmitted disease. It may also be reasonably necessary to the assessment by the medical health care provider of the potential for pregnancy and the potential for pregnancy problems related to genetic characteristics, as well as to the treatment and spreading of other sexually transmitted diseases such as syphilis and gonorrhea. Furthermore, certain diseases, such as acquired immune

deficiency syndrome, cannot be detected in the early stages after a sexual assault.[33]

Disclosure of the assailant's identity also refers to the injury itself; it is part of the pain experienced by the victim. The identity of the assailant should be considered part of the physician's choice for diagnosis and treatment, allowing the physician to structure the examination and questions to the exact type of trauma the child recently experienced.

In addition to the medical aspect explained above, the psychological trauma experienced by a child who is sexually abused must be recognized as an area that requires diagnosis and treatment. A physician must know the identity of the assailant in order to prescribe the manner of treatment, especially where the abuser is a member of the child's household. As found in *Wilkins, supra,* sexual abuse cases involve medical, physical, developmental, and psychological components, all of which require diagnosis and treatment.[34] It should be noted that reference here is to psychological *treatment* resulting from physical abuse of a child. Our holding in *LaLone* does not preclude this result because *LaLone* involved statements made during a psychological examination, rather than psychological treatment resulting from a medical diagnosis.

A physician should also be aware of whether a child will be returning to an abusive home. This information is not needed merely for "social disposition" of the child, but rather to indicate whether

[33] "PHS Recommendations for Management of Persons After Occupational Exposures That May Place Them at Risk of Acquiring HIV Infection," Center for Disease Control, *Morbidity & Mortality Weekly Report,* January 26, 1990, vol 39, no RR-1, p 2.

[34] See also *LaLone, supra* at 117 (ARCHER, J., concurring in part and dissenting in part).

the child will have the opportunity to heal once released from the hospital.

Statements by sexual assault victims to medical health care providers identifying their assailants can, therefore, be admissible under the medical treatment exception to the hearsay rule if the court finds the statement sufficiently reliable to support that exception's rationale.

II

In all three cases, the hearsay statements were made by the declarants with the understanding that they were receiving medical treatment or diagnosis in connection with treatment, and described the external sources of their injuries. In *LaLone,* we held that "the identity of an assailant cannot fairly be characterized as the 'general cause' of an injury." *Id.* at 113. We believe statements describing an external source may require some type of identification, while the general character of the cause does not necessarily require identification. The statements must be specific enough to allow for identification of the external source of injury.

In *Conn,* the hearsay statement was made by the seven-year-old declarant with the understanding that she was receiving medical treatment or diagnosis in connection with treatment. The declarant had complained of pelvic pain and was brought by her mother to see the doctor. In *Meeboer,* the six-year-old victim was examined by a physician after her uncle noticed her scratching her private parts and her aunt noticed redness and swelling after giving her a bath. When notified, the victim's mother called the police and then took the child to the hospital, where they were referred to the physician to whom the child made

the statement identifying the defendant as her assailant. Finally, in *Craft,* the four-year-old hearsay declarant was brought to the doctor's office because her foster mother noticed a discharge in her underwear. The physical symptoms in these cases required examinations by the physicians for purposes of medical diagnosis and treatment. These statements identifying the assailants were also descriptions of the external sources of these victims' injuries. The statements were made in response to inquiries concerning how the victims were injured.

### A. TRUSTWORTHINESS

To be admissible under MRE 803(4), these statements must also be made with the understanding by the declarant of the need to tell the truth to the physician. Sufficient evidence was introduced in *People v Conn* and *People v Meeboer* in support of the reliability of the hearsay statements to allow the application of MRE 803(4).

The disputed hearsay statement made by the victim in *Conn* did not identify the defendant by name, but rather described her assailant, directly implicating defendant.

The victim was seven years old when she spoke to the doctor. She attended school at that time, responded appropriately to the doctor's inquiries, and was found competent by the court to testify.[35] She did in fact testify at trial, and the defense had ample opportunity to cross-examine her while she was on the stand. The victim spoke with the doctor and identified the defendant as the cause of her injuries before any investigation against him had begun. In fact, it was the doctor who alerted the proper authorities to the sexual abuse. The child

[35] The victim was ten years old at the time of trial.

was in an environment of receiving medical care, and was not in any way pressured to accuse the defendant as her assailant.

Upon examination of the victim's pelvic area, the physician found labial irritation. When asked how that area got hurt, the victim initially stated that she had fallen off her bicycle.[36] The child testified that her mother told her to tell the doctor that a male baby sitter had sexual contact with her, but when then told by her mother to tell the doctor the truth, the doctor testified that the victim described her assailant as "a man that was living in the home with her and someone that she had multiple sexual experiences with." The initial motive to fabricate was in response to the mother's plan to protect the defendant from criminal prosecution. Despite initial conformity with that plan, the victim named the defendant as her assailant when told to tell the truth.

From a review of the record, it appears that the circumstances surrounding the child's declaration of the hearsay statement sufficiently demonstrate the understanding on the part of the victim to tell the truth to the physician. Any conclusion raised by her tender years that she could not formulate a self-interested motivation to speak the truth to her physician was sufficiently countered by circumstantial evidence of her understanding of the need to be truthful.

In *Meeboer,* the child made the statement of identification when she was six years old. The court found the victim competent to testify. She was still six years old at the time of trial. The examination took place two days following discovery by the child's family of possible abuse. Although the police had been alerted to the family's

[36] See n 4.

suspicion of defendant, there is no indication that the examination was a pretext for an investigation. The physician was attempting to determine whether in fact abuse had occurred. Nor was there evidence indicating that the child fabricated her story. The child knew the defendant, for she had often stayed with his family, so she would not have mistaken his identity. Furthermore, the child stayed at his home during the weekend the assault occurred, although there was conflicting testimony regarding the issue of his opportunity to be alone with the child.

During trial the physician testified that she was aware, before conducting the examination, that the child might have been a victim of sexual abuse. When asked during the examination if anyone had done something to her they were not supposed to do, the child answered that the defendant had genital contact with her, using his hand and penis, as well as contact with her rectum and mouth with his penis. The exact words used during the examination are not reflected in the record. The doctor testified, however, that the child pointed to her genital area when asked where she was touched, and indicated that the penis entered her vagina further than the doctor's finger upon examination, which indicated more than a one-inch penetration. While there was testimony, which her mother disputed, that the child might have seen adult cable movies depicting sexual encounters, there was no other evidence of the manner by which this six-year-old child would know the nature and mechanics of sexual intercourse.

The physician qualified as an expert in pediatrics and in identification of sexual abuse in children. While the physician was a member of a child abuse team at Hurley Hospital whose purpose it

was to investigate alleged complaints of abuse and neglect, there does not appear from the record any use of leading or improper questions. The child was asked what happened, and she answered that the defendant had sexual encounters with her. The identification of the defendant was almost incidental to the remainder of the statement conveying what happened.

The victim experienced discomfort in her pelvic area, her family brought her to the doctor to determine its cause, and she answered questions initiated by the physician. The circumstantial evidence of trustworthiness is sufficient to establish that the child had the selfish motivation to speak truthfully to her physician.

### B. REASONABLE NECESSITY

We further find that in these two cases the identification of the assailant was reasonably necessary to the victims' medical diagnosis and treatment.

In *Conn,* the foundation for admission of the statement of identification was created by a conclusory assertion that the statement of identification was reasonably necessary to diagnosis and treatment. In light of the ambiguity concerning the requirements for admission under prior case law, however, it is appropriate to consider the circumstances surrounding the statement to determine whether the statement was reasonably necessary to diagnosis and treatment.

The doctor testified that he inquired into the identity of the assailant as an aid for his diagnosis and treatment. He inquired into the identity of the assailant so he could scan for sexually transmitted diseases. Furthermore, since the doctor learned that the assailant was a member of the victim's

household, he in fact began her future treatment by alerting the authorities. The mother was incapable of protecting her daughter from the assaults of the defendant. Had she been more capable, the information gleaned by the doctor could have alerted her to the immense problem in her own household and been used by her to ensure that her daughter healed and did not suffer any more physical or emotional abuse. ·

The fact that child protective services were alerted does not turn the question of the assailant's identity into an issue of social disposition. The victim was removed from her home and allowed to physically heal. She began psychological therapy, and was at the time of trial receiving therapy. Treatment and removal from an abusive environment is medically beneficial to the victim of a sexual abuse crime and resulted from the victim's identification of the assailant to her doctor. The questions and answers regarding the identity of her assailant can therefore be regarded as reasonably necessary to this victim's medical diagnosis and treatment.

In *Meeboer,* a specific foundation was established for admission of the statement of identification under MRE 803(4). In fact, the trial judge warned counsel to lay a firm foundation before proceeding with his questioning.

The physician testified that she was a member of the child abuse team at Hurley Hospital that investigated allegations of sexual assault. She had attended a seminar on sexual abuse, during which she participated in a workshop on the emotional effect of sexual assault on children. In response to questions regarding the purpose for her questioning the child, the physician stated:

Basically it gives me an idea of what to look for

when I'm examining the child and some questions to ask while I'm examining. And, also, to get an idea of how the child is handling the alleged sexual abuse so that I can, perhaps, work to allay any fears or any apprehension when I'm going to be doing the exam.

She then answered in the affirmative the questions of the trial judge whether she was going to treat the victim and whether she was going to make a medical diagnosis in connection with her medical treatment.

### C. *PEOPLE v CRAFT*

In *People v Craft*, we are not persuaded that sufficient evidence was presented to support admission under MRE 803(4) of the child's statement of identification to the physician. The victim was only four years old, making it more difficult to establish that she understood the need to be truthful to her physician. The circumstances surrounding the examination of the child, during which the defendant was named as the assailant, do not adequately establish that this child knew she must speak truthfully to her physician.

Because of the need for frequent urination and a discharge in her underwear, the child's teachers notified protective services and the police. After her mother was also notified, the child was examined by a physician, who noted that the child's vaginal opening was larger than expected of a four-year-old child, and the hymen was not intact. No lacerations or scarring was noticed, however. The child did not implicate defendant as the person having sexual contact with her, although she did indicate that a boy had touched her. This examination was the first indication by the child

that some sexual assault or encounter may have occurred.

The second examination of the child was conducted by a different doctor, and took place after the child was removed from her home. The foster mother noticed a discharge in the child's underwear, and brought her to the doctor to determine the source of the discharge. Through the physician's testimony, the record shows that the victim identified defendant as her assailant in response to general questions regarding who might have touched her. The child understood that defendant had put "his weenie," which was "straight," and a "rubber on his weenie" in her genital area. The child indicated by pointing to her genital area where her assailant's "weenie" would be on him. Such knowledge of the mechanics of sexual intercourse strengthens the assertion that this child did not fabricate her story, and the mother of the victim admitted that she knew no reason why the child would lie, nor how she would know of the mechanics of sexual intercourse, aside from the possibility that the child witnessed her mother and defendant engaged in intercourse.[37] An investigation of possible sexual abuse was ongoing during that time, however, and we cannot conclude from this record whether the child was influenced in her accusation of the defendant. The initial examination of the child took place two days after the alleged assault. The child resided with her family at that time, and she did not accuse defendant of any wrongdoing during that examination. The child was then removed from her home and placed in foster care. Several weeks later, she was exam-

[37] The prosecutor impeached this part of the mother's testimony with a prior inconsistent statement made by her at the preliminary examination, where the mother testified that the child could not have witnessed her mother and defendant engaged in intercourse.

ined again by a different physician, during which examination the child implicated the defendant as her assailant. The passage of time between the two examinations, as well as the participation of investigative authorities before the examination during which the child indicated that defendant had assaulted her, demonstrates the insufficiency of the evidence presented in support of the application of MRE 803(4).

The physician in *Craft* testified that the purpose of her examination and questions was to determine the source of the vaginal discharge. She also established her opinion that information regarding the identity of the assailant was not necessary to proper diagnosis, but was necessary for treatment and reporting.

It was very important to determine if an adult male had penetrated the child in order to screen for sexually transmitted diseases. The doctor considered the identification of the assailant to be necessary for treatment and reporting in that she did not pursue further diagnostic studies of the victim's secondary complaint of incontinence because she wanted to see how the child healed outside the home. The identification of the assailant was reasonably necessary with reference to the placement and the physical and psychological treatment of the child.

While perhaps the information necessary for treatment of an ailment that is capable of diagnosis without that knowledge falls within MRE 803(4), we do not resolve that issue because we believe that an analysis of the totality of the circumstances does not support the finding that the statement was made with the requisite understanding by the declarant to speak the truth to her physician.

We therefore affirm the decisions of the Court of

Appeals in *People v Meeboer* and *People v Craft,* and reverse the decision of the Court of Appeals in *People v Conn.*

BOYLE, GRIFFIN, and MALLÉTT, JJ., concurred with RILEY, J.

BRICKLEY, J. (*dissenting*). I agree with the majority's assertion that "it is very important that the understanding to tell the truth to the physician be established." *Ante,* p 324. However, that assertion is undermined by the fact that the majority has included within its totality of the circumstances evaluation evidence—e.g., physical evidence of the sexual assault—that is unrelated and irrelevant to a child's motivation to be truthful to a medical care provider. Furthermore, in its application of MRE 803(4) the majority has, without expert medical support in the record, prescribed for these and other cases what is or is not a medically necessary line of inquiry for the treatment of a sexually abused child. Principally for these reasons, I write in dissent.

I

Michigan's early common-law jurisprudence recognized that out-of-court statements regarding present pain and suffering should constitute exceptions to the hearsay rule because they represent a natural and ordinary mode in which a person's bodily inflictions are made known to others, including medical personnel. See *Hyatt v Adams,* 16 Mich 180 (1867). We stated, however, that declarations of *past* pain and suffering constitute narratives of past conduct and not contemporaneous actions or utterances associated with the description of present pain and suffering. See *Johnson v McKee,* 27 Mich 471 (1873). Hearsay statements

made to medical care providers regarding *present
pain and suffering* were admissible, unless such
statements were made solely in anticipation of
litigation. See *Grand Rapids & Indiana R Co v
Huntley,* 38 Mich 537 (1878); *McKormick v West
Bay City,* 110 Mich 265; 68 NW 148 (1896). These
hearsay statements to medical care providers were
admissible at trial because of the inherent reliabil-
ity or trustworthiness that is assumed to exist in
the context of a person seeking medical treatment,
and found lacking when the hearsay statement is
made solely to obtain a medical opinion for pur-
poses of litigation.

The Michigan Rules of Evidence, adopted on
January 5, 1978, expanded upon our common-law
rule regarding admission of hearsay statements
made for purposes of medical treatment or diagno-
sis. The medical treatment hearsay exception we
adopted, MRE 803(4), permits hearsay statements
made for purposes of medical treatment, or diagno-
sis *in connection with treatment,* to be admissible
even if they describe the medical history of the
declarant; the inception or general character of
the cause or external source of any bodily injury
or condition; or the *past* or present symptoms,
pain, or sensations experienced by the declarant
insofar as reasonably necessary to such diagnosis
and treatment. Although we embraced admissibil-
ity of a broader range of hearsay declarations by
adopting MRE 803(4),[1] the foundational support
underlying that particular hearsay exception con-
tinued to be predicated, as it was at common law,

_____

[1] However, we did not embrace as broad a range of admissible
hearsay statements as that adopted in FRE 803(4), and most jurisdic-
tions. Other jurisdictions permit hearsay statements to be admissible
pursuant to the medical treatment hearsay exception even if only
made for purposes of diagnosis, without connection to treatment, and
the statements only need to be reasonably pertinent to diagnosis or
treatment, rather than reasonably necessary.

upon the inherent reliability and trustworthiness
of the hearsay statements made by declarants in
that particular situation. Such inherent reliability
and trustworthiness of the declarant's hearsay
statements to the medical care provider were, and
continue to be, based upon the *self-interest motiva-
tion factor* possessed by the declarant in receiving
proper medical care.

This self-interest motivation policy rationale is
predicated upon the assumption that a declarant
will feel compelled to give accurate and truthful
information in order to receive proper medical
care, and that is the *sole basis* for finding these
particular hearsay statements inherently reliable
and trustworthy.[2]

II

The majority begins its analysis of MRE 803(4)
in these cases by correctly noting that the self-
interest motivation component is a traditional
rationale for admissibility of hearsay statements
made for purposes of medical treatment. See *ante,*
p 322.[3] A concise analysis of the issue under con-

_____

[2]  Even those few jurisdictions which have shied away from
generally admitting statements of present condition have al-
lowed them if made to a physician for purposes of diagnosis
and treatment *in view of the patient's strong motivation to be
truthful.* [Advisory Committee Note for FRE 803(4), 34 L Ed 2d
clxiv. Emphasis added.]

See also 2 McCormick, Evidence (4th ed), § 277, pp 246-249; 4 Wein-
stein & Berger, Evidence, ¶ 803(4)[01], p 803-144; 4 Louisell & Mueller,
Federal Evidence, § 444, pp 593-594; 2 Jones, Evidence, § 10:7, p 270; 6
Wigmore, Evidence (Chadbourn rev), §§ 1718-1723, pp 101-128.

[3] The "reasonable necessity" of the hearsay statement being made
for purposes of diagnosis and treatment is advanced by the majority
as another supporting rationale for adoption of a medical treatment
hearsay exception. However, that does not constitute a separate
rationale for the application of MRE 803(4), rather it is a limitation
upon the type of evidence that may be admitted pursuant to that
hearsay exception. The reasonable necessity of the information does

sideration, and with which I agree, is summarized in the following passage from the majority opinion:

> While in cases involving adults a *cognitive connection* between speaking the truth to physicians and receiving proper medical care may seem obvious, further analysis of the circumstances surrounding the examination of a child is necessary to determine *whether the child understood the need* to be truthful to the physician. [*Ante,* pp 322-323. Emphasis added.]

Such an analysis, if faithfully followed, would correctly focus the evaluation of these hearsay statements upon the necessity for the child declarant to possess an understanding of the relationship between truthful information being communicated to the medical care provider and the receipt of proper medical care.

A

However, after initially noting the importance of the self-interest motivation factor for application of MRE 803(4), the majority then downgrades the importance of that component of the hearsay exception and undertakes a review of the hearsay statements, rather than the circumstances of the declarations, to determine if they were inherently reliable or trustworthy, considering factors other than the extent of the self-interest motivation possessed by the declarant.

The *trustworthiness* of a child's statement can

not insure that the information will be inherently reliable or trustworthy; the only assurance that the hearsay statements will be inherently reliable is the self-interest motivation of the declarant in receiving proper medical care. Thus, there is one, and only one, supporting rationale for the application of MRE 803(4).

be sufficiently established to support the applica-
tion of the medical treatment exception. [*Ante*, p
322. Emphasis added.]

A totality of the circumstances approach is then
adopted to review the inherent reliability or trust-
worthiness of the hearsay statements, as employed
by the United States Supreme Court for a Confron-
tation Clause analysis in *Idaho v Wright*, 497 US
805; 110 S Ct 3139; 111 L Ed 2d 638 (1990). The
totality of circumstances analysis is evaluated,
according to the majority, to establish the exis-
tence of a self-interest motivation on behalf of the
child declarant.[4] I believe that the majority has
incorporated an inappropriate evaluation for de-
termining whether a self-interest motivation is
possessed by a child declarant for application of
MRE 803(4). The totality of circumstances ap-
proach has downgraded the importance of the self-
interest motivation factor by considering whether
the child declarant appears to have been truthful
with respect to the hearsay statements made to
the medical care provider, without relating the
significance of such an evaluation to the possession
of a self-interest motivation by the child. It is at
this juncture that I depart from the analysis
adopted by the majority and feel compelled to
dissent.

1

The trial courts, under the majority approach,
will evaluate hearsay statements by a child to
determine whether those hearsay statements un-
der consideration contain sufficient guarantees of
trustworthiness, which may be interpreted as

---

[4] It is important to note that the majority has accepted the neces-
sity for all declarants to possess a self-interest motivation factor for
their hearsay statements to be admitted pursuant to MRE 803(4).

whether the trial court believes the statements are in fact truthful, to determine whether the declarant "understood the need to be truthful to the physician" for admissibility pursuant to MRE 803(4). *Ante*, p 323. This analysis misses the mark with respect to the proper application of hearsay exceptions in general, and specifically MRE 803(4), because the underlying rationale of each hearsay exception is that the *context* in which the statements were made, in and of themselves, contains such necessary reliability and trustworthiness that further inquiry would not be necessary. Therefore, in applying the medical treatment hearsay exception, a separate analysis regarding the "inherent reliability" or "trustworthiness" of the hearsay statements in a given situation is not necessary or appropriate because any hearsay statements fitting within application of a particular hearsay exception are deemed to be inherently reliable and trustworthy without further analysis.

The majority contemplates that the totality of circumstances approach shall be employed for evaluating the existence of a self-interest motivation for purposes of MRE 803(4), where it states:

> that due to the tender years of the hearsay declarants, the understanding to tell the truth may not be as apparent as it is with adults; that investigation into the circumstances surrounding the making of the hearsay statements is required in order to establish whether the child understood the need to be truthful to the physician. [*Ante,* p 326.][5]

[5] There is a large difference between understanding that truth should be given in the general sense and understanding that not giving truthful information may be detrimental to one's health. This subtle distinction is at the root of the matter currently under consideration and is the basic difference between our approaches. I would contend that children do not *necessarily* possess the required cognitive ability to make the connection between giving truthful information and receiving proper medical care required for a self-interest

That passage indicates that the totality of the circumstances analysis shall constitute a complement to the evaluation of the self-interest motivation factor for application of MRE 803(4) in situations involving child declarants. However, the majority has not evaluated whether the child declarant in any of these cases in fact possessed a self-interest motivation; rather, it only focuses upon the trustworthiness of the statements themselves to establish the existence of the self-interest motivation. Therefore, the analysis is actually transformed into an evaluation of the totality of the circumstances to evaluate the trustworthiness of the statements rather than determining the existence of a self-interest motivation on the part of the child declarant. Thus, the totality of circumstances analysis is rendered a substitute for, rather than a complement to, the self-interest motivation analysis.

It follows from the majority's analysis that a hearsay statement by a child declarant may be admitted pursuant to MRE 803(4), "even where it is not apparent that the child understood that statements must be truthful in order to receive proper care" as long as the totality of circumstances otherwise establish the hearsay statements to be inherently reliable and trustworthy. *Ante,* p 326. It is this downgrading of the importance of the self-interest motivation factor, as evidenced by the majority's evaluation of whether the hearsay statements in these cases appear truthful on other

motivation component to exist; whereas the majority, while acknowledging children may not possess such self-interest motivation, concludes that such motivation is not important if the statements are otherwise reliable and trustworthy on the basis of the totality of circumstances presented. Without that self-interest motivation component being possessed by the declarant, there is no basis whatsoever for permitting the admission of such hearsay statements pursuant to MRE 803(4), and once that self-interest is established, there is no basis to exclude such statements.

grounds, that, in my judgment, flaws its approach to the application of MRE 803(4).

2

The medical treatment hearsay exception has been classified as a firmly rooted hearsay exception which permits it to automatically satisfy the mandates of the Confrontation Clause when hearsay statements are admitted pursuant to that hearsay exception.

> We note first that the *evidentiary rationale* for permitting hearsay testimony regarding spontaneous declarations and statements made in the course of receiving medical care is that such out-of-court declarations *are made in contexts* that provide substantial guarantees of their trustworthiness.[8] . . . Similarly, a statement made in the course of procuring medical services, where the declarant *knows* that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony.

> ---
> [8] Indeed, it is this factor that has led us to conclude that "firmly rooted" exceptions carry sufficient indicia of reliability to satisfy the reliability requirement posed by the Confrontation Clause. . . . *There can be no doubt that the two exceptions we consider in this case are "firmly rooted."* . . . The exception for statements made for purposes of medical diagnosis or treatment is similarly recognized in the Federal Rules of Evidence, Rule 803(4), and is equally widely accepted among the States.
> ---

> [*White v Illinois,* 502 US —; 112 S Ct 736; 116 L Ed 2d 848, 859, n 8 (1992). Emphasis added. See also *Idaho v Wright, supra,* 111 L Ed 2d 655 ("[l]ikewise, the 'dying declaration' and 'medical treatment' exceptions to the hearsay rule are based on the belief that persons making such statements are highly unlikely to lie)."]

This passage from *White* clearly demonstrates that

the self-interest motivation factor associated with the medical treatment hearsay exception is the component that ensures the inherent reliability or trustworthiness of such hearsay statements to permit admission at trial.[6] That is the basis upon which the United States Supreme Court opined that admission of hearsay statements pursuant to the medical treatment hearsay exception does not require further analysis for other indicia of reliability and should be considered firmly rooted.

3

The application of MRE 803(4) advanced by the majority is inappropriate because of the broadening of the totality of circumstances analysis to include corroborating evidence extrinsic to the context in which the hearsay statement was made by the declarant. This impermissibly expands the relevant sphere of circumstances to be evaluated in determining whether the hearsay statement was made in a context that ensures reliability or trustworthiness.

The United States Supreme Court has indicated that courts are not to consider corroborating evidence to determine whether hearsay statements are sufficiently reliable to withstand Confrontation Clause analysis.

We think the "particularized guarantees of trustworthiness" required for admission under the

---

[6] It should be noted that the United States Supreme Court did not evaluate the propriety of admitting the hearsay statements by the child declarant pursuant to the medical treatment hearsay exception in that case. See *White, supra,* 116 L Ed 2d 856, n 4. Although the application of the medical treatment hearsay exception was not, and could not, be evaluated by the United States Supreme Court, the basis upon which that hearsay exception is considered sufficiently reliable to withstand Confrontation Clause attack is pertinent to the manner in which the exception should be applied in general.

Confrontation Clause must likewise be drawn from
the totality of circumstances *that surround the
making of the statement and that render the
declarant particularly worthy of belief.* Our prece-
dents have recognized that statements admitted
under a "firmly rooted" hearsay exception are so
trustworthy that adversarial testing would add
little to their reliability. . . . Thus, unless an affir-
mative reason, *arising from the circumstances in
which the statement was made,* provides a basis
for rebutting the presumption that a hearsay
statement is not worthy of reliance at trial, the
Confrontation Clause requires exclusion of the out-
of-court statement.

                        *   *   *

To be admissible under the Confrontation
Clause, hearsay evidence used to convict a defen-
dant must possess [an] indicia of reliability by
virtue of its inherent trustworthiness, *not by refer-
ence to other evidence at trial. . . . In short, the
use of corroborating evidence to support a hearsay
statement's "particularized guarantees of trustwor-
thiness" would permit admission of a presump-
tively unreliable statement by bootstrapping on
the trustworthiness of other evidence at trial,* a
result we think at odds with the requirement that
hearsay evidence admitted under the Confronta-
tion Clause be so trustworthy that cross-examina-
tion of the declarant would be of marginal
utility. . . . [W]e think the presence of corroborat-
ing evidence more appropriately indicates that any
error in admitting the statement might be harm-
less, rather than that any basis exists for presum-
ing the declarant to be trustworthy. . . .

This concern applies in the child hearsay con-
text as well: *Corroboration of a child's allegations
of sexual abuse by medical evidence of abuse, for
example, sheds no light on the reliability of the
child's allegations regarding the identity of the
abuser.* [*Wright,* 111 L Ed 2d 655-658. Emphasis
added. See also *Lee v Illinois,* 476 US 530; 106 S Ct
2056; 90 L Ed 2d 514 (1986) (the majority consid-
ered the "circumstances surrounding the confes-

sion" to evaluate the reliability of the hearsay statement, whereas the dissent considered corroborating physical evidence to determine the statement's reliability).]

Thus, the United States Supreme Court has explicitly held that the proper focus for evaluating the reliability of hearsay statements, for purposes of the Confrontation Clause, is based upon the circumstances that existed at the time the statement was made by the declarant rather than an evaluation of corroborating evidence extrinsic to such a situation.[7]

Conversely, the majority in these cases has come to the conclusion that precluding the use of corroborating evidence to assess the inherent reliability and trustworthiness of statements to be admitted pursuant to MRE 803(4) is an improper limitation upon that assessment. The majority states:

Although some courts hold that corroborative evidence relating to the truth of the out-of-court statement should not be considered in determining whether to admit the statement [citing *Wright,*

---

[7] The United States Court of Appeals for the Seventh Circuit has stated:

The circumstantial guarantees of trustworthiness *on which the various specific exceptions to the hearsay rule are based are those that existed at the time the statement was made and do not include those that may be added by using hindsight.*

\* \* \*

Because the presence or absence of corroborative evidence is irrelevant in the case of a specific exception, it is irrelevant here, where the guarantees of trustworthiness must be equivalent to those supporting specific exceptions. [*Huff v White Motor Corp,* 609 F2d 286, 292-293 (CA 7, 1979). Emphasis added.]

This analysis in *Huff* was cited with approval in *Wright, supra,* for determining the reliability of hearsay statements for Confrontation Clause purposes. See also *Morrison v Duckworth,* 929 F2d 1180 (CA 7, 1991).

*supra*], *we believe the better reasoned view is that
the reliability of the hearsay is strengthened when
it is supported by other evidence.· Corroborating
physical evidence of the assault, evidence that the
person identified as the assailant had the opportu-
nity to commit the assault,* and resulting diagnosis
and treatment can support the trustworthiness of
the child's statements regarding a sexual assault
and aid in the determination whether the state-
ment was made for the purpose of receiving medi-
cal care. [*Ante,* pp 325-326. Emphasis added.]

Accordingly, the majority would permit use of
corroborating evidence in assessing the totality of
circumstances that it believes indicate the inher-
ent reliability or trustworthiness of the statements
to be admitted pursuant to MRE 803(4), despite
such an approach being clearly contrary to the
express ruling of the United States Supreme Court
regarding a similar evaluation employed for pur-
poses of the Confrontation Clause.[8] While we do
not have a Confrontation Clause challenge here,
because we are applying a firmly rooted hearsay
exception in these cases, the United States Su-
preme Court's evaluation of the approach adopted
by the majority is revealing from an evidentiary
standpoint.

B

For these reasons, I would not disconnect MRE
803(4) from its established and time-honored moor-
ings of reliance on, *and only on,* the inherent
reliability and trustworthiness that springs from
the self-interest motivation of the declarant in
receiving proper medical care after giving com-

[8] It must be noted that the majority adopted its totality of circum-
stances approach from the analysis of the United States Supreme
Court in *Wright*; however, it failed to adopt this additional, and
critical, aspect of that decision.

plete and accurate information to the medical care provider.

### III

There is a split of authority regarding the proper application of the medical treatment hearsay exception in child abuse cases, especially as it should be applied to statements of identity. Some courts have found that hearsay statements by an allegedly abused child to a medical care provider are within the application of the medical treatment hearsay exception.[9] The focus of these cases centered upon whether the hearsay statements, including those of identification, were "reasonably pertinent" and essentially ignored whether the child in fact understood the ramifications of giving misinformation to a medical care provider, which is similar to the majority approach. This is exemplified in the following passage from the Arizona Supreme Court decision in *State v Robinson,* 153 Ariz 191, 199; 735 P2d 801 (1987).

> Because of their young age, *sexually abused children may not always grasp the relation between their statements and receiving effective medical treatment.* It is particularly important, therefore, to ask whether the information sought by the treating doctor was reasonably pertinent to effective treatment. [Emphasis added.]

The line of cases employing this type of analysis

[9] See *United States v Renville,* 779 F2d 430 (CA 8, 1985); *State v Robinson,* 153 Ariz 191; 735 P2d 801 (1987); *Stallnacker v State,* 19 Ark App 9; 715 SW2d 883 (1986); *State v Dollinger,* 20 Conn App 530; 568 A2d 1058 (1990); *State v Larson,* 453 NW2d 42 (Minn, 1990); *State v Aguallo,* 318 NC 590; 350 SE2d 76 (1986); *State v Altgilbers,* 109 NM App 453; 786 P2d 680 (1989); *State v Newby,* 97 Or App 598; 777 P2d 994 (1989); *State v Moen,* 309 Or 45; 786 P2d 111 (1990); *State v Butler,* 53 Wash App 214; 766 P2d 505 (1989); *State v Edward, Charles L,* 398 SE2d 123 (W Va, 1990); *State v Nelson,* 138 Wis 2d 418; 406 NW2d 385 (1987); *Horton v State,* 764 P2d 674 (Wy, 1988).

illustrates how the original foundation upon which the medical treatment hearsay exception is based, the self-interest motivation by the declarant, becomes subordinated to other policy concerns or rationales presented in child abuse cases in order to make these hearsay statements admissible.

Other jurisdictions have determined that a child declarant who does not appreciate the need to communicate accurate information to a medical care provider does not fit within the application of the medical treatment hearsay exception.[10] These courts have determined that the absence of such knowledge being possessed by the child declarant eliminates the foundation supporting the application of the medical treatment hearsay exception and precludes use of that hearsay exception.

The Maryland Court of Appeals undertook a thorough analysis of the application of the medical treatment hearsay exception in child abuse situations. That court concisely summarized the concern of allowing a child's hearsay statements to be admissible pursuant to the medical treatment hearsay exception in the following passage:

> Indeed, the rationale for trustworthiness argued by the State—an infantile naïveté—actually contradicts the trustworthiness rationale on which the Treating Physician exception *exclusively depends.* The latter requires a certain level of conscious sophistication on the part of the declarant— a purposeful motivation to describe accurately arising out of concerned self-interest. That purposeful motivation did not exist here. *Without it, the necessary predicate for this particular hearsay*

---

[10] See *WCL v People,* 685 P2d 176 (Colo, 1984); *Sluka v State,* 717 P2d 394 (Alas App, 1986); *Oldsen v People,* 732 P2d 1132 (Colo, 1986); *In re Rachel T,* 77 Md App 20; 549 A2d 27 (1988); *State v Harris,* 247 Mont 405; 808 P2d 453 (1991).

*exception cannot exist.* [*Cassidy v State,* 74 Md
App 1, 30; 536 A2d 666 (1988). Emphasis added.][11]

I find this analysis more persuasive for interpret-
ing the proper application of the medical treat-
ment hearsay exception as *a rule of evidence* as it
was created at common law and was incorporated
into modern jurisprudence. The courts that have
downgraded this underlying premise of the self-
interest motivation factor have focused instead
upon the probative value of such information be-
ing admissible at trial. However, the significance
of this hearsay evidence to the factfinder's resolu-
tion of the case should actually heighten the stan-
dard of admissibility in order to ensure inherent
reliability and trustworthiness associated with this
hearsay exception as it was originally adopted,
rather than lessen it.

Still other courts have determined that state-
ments of identification made by a child declarant
to a medical care provider are not sufficiently
connected to the rendering of medical treatment to
come within the medical treatment hearsay excep-
tion.[12] The *Cassidy* panel also undertook an evalua-
tion of the connection between hearsay statements
of identity by a child declarant and the rendering
of medical treatment in a child abuse situation.

[11] The majority asserts that "courts have not asserted a lack of
conscious connection as a basis for excluding statements by children
that are otherwise admissible under the medical treatment excep-
tion." *Ante,* p 326. However, as I have indicated above, several
courts have in fact found that children may not possess the necessary
conscious connection for their hearsay statements to be admissible
pursuant to the medical treatment hearsay exception even if they
would be if spoken by an adult. Such an assertion by the majority is
perplexing in light of its citation of the Maryland Court of Appeals
decision in *Cassidy v State.* See *ante,* p 327, n 31.

[12] See *Wilson v State,* 194 Ga App 537; 390 SE2d 903 (1990); *People
v Taylor,* 153 Ill App 3d 710; 106 Ill Dec 614; 506 NE2d 321 (1987);
*Trigg v Sanders,* 162 Ill App 3d 719; 114 Ill Dec 96; 515 NE2d 1367
(1987); *People v Perkins,* 216 Ill App 3d 389; 576 NE2d 355 (1991);
*State v True,* 438 A2d 460 (Me, 1981).

The identity of the person who inflicted the bruises, albeit perhaps of transcendent social importance, is not ordinarily of strictly medical importance. *Once the perceived end purpose of the examination moves beyond the medical treatment of a physical ailment, the reason for this particular exception ceases to exist—the fear that a doctor will do a wrong and harmful thing to the declarant's body.* [*Id.* at 33-34. Emphasis added.]

However, that court did acknowledge that in certain situations the identity of the assailant may be reasonably *pertinent* for purposes of medical treatment.

When there is a danger that an assault victim may have contracted a communicable disease, of course, the identity of the assailant may take on significant medical pertinence. [*Id.* at 34, n 14.]

The Ohio Supreme Court has noted the insincerity of those courts that assert children necessarily understand the importance of giving accurate information to medical providers and that also conclude that statements of identification should be treated differently in cases involving child abuse victims than in other situations. See *State v Boston,* 46 Ohio St 3d 108; 545 NE2d 1220 (1989).

The limited foregoing survey of other jurisdictions makes it evident that we are not alone in our struggle to appropriately interpret and apply our medical treatment hearsay exception, especially as it relates to hearsay statements by children declarants. After reviewing the diverse case law on this subject, I am convinced that those jurisdictions that require a declarant to possess a self-interest motivation factor for application of the medical treatment hearsay exception, and find that children do not necessarily possess such an ability, are

the most persuasive and the most consistent with the basis of that exception.

IV

A

I would undertake a different evaluation for application of MRE 803(4) than that employed by the majority. I would require the trial court to determine whether a declarant with diminished capacity, such as a child of tender years, was able to make the necessary cognitive connection between communicating accurate and truthful information to the medical care provider and receiving proper medical treatment, or diagnosis in connection with treatment, at the time the hearsay statement was made, to be admissible pursuant to MRE 803(4).

Absent such a cognitive connection being possessed by the declarant, the self-interest motivation policy rationale that provides the foundation for MRE 803(4) collapses and renders such a hearsay exception inapplicable, as previously stated. Without such foundational support, the inherent reliability associated with hearsay statements made to a medical care provider is lost, and that hearsay exception should not be employed to admit the hearsay statements. For persons with diminished capacity, knowing the relationship between seeking medical care and giving accurate information is not necessarily obvious, even though they may, in fact, understand that statements are being made in contemplation of medical treatment or given to a medical care provider. Thus, it is crucial to make this important and necessary distinction for purposes of applying MRE 803(4) in order to remain faithful to the basis for that rule of evidence.

Requiring that a declarant, shown to possess a diminished capacity at the time of making a hearsay statement, have sufficient cognitive ability to permit admission of a hearsay statement pursuant to MRE 803(4) would not be unprecedented in evaluating the admissibility of testimony generally.[13] When there is a question regarding competency of a witness to testify in any trial, the court is required to determine the physical or mental capacity of the witness and whether the witness understands the sense of obligation associated with the act of testifying. See MRE 601. Additionally, whenever a witness in a judicial proceeding is less than ten years old, a trial court is mandated by statute to ascertain whether the child has "sufficient intelligence and sense of obligation to tell the truth to be safely admitted to testify . . . ." MCL 600.2163; MSA 27A.2163. Absent a sufficient showing of such intelligence and sense of obligation, the witness is not permitted to testify under the rule of evidence or the statute. Therefore, reliability of any testimony by a witness under ten years of age is cast into doubt, and the court is required to determine whether the particular child's cognitive ability extends to distinguishing true from false

[13] In fact, the panel in *Huff*, n 7 *supra* at 294, stated:

But he is a hearsay declarant, not a witness, and the circumstantial guarantees of trustworthiness on which the admissibility of the hearsay depends all presuppose the mental capacity of a reasonable man in the position Huff was in. *If that mental capacity was lacking, so are the guarantees of trustworthiness. Since it is the judge who must determine whether the requisite guarantees exist, he must determine whether Huff possessed the requisite capacity.* The burden is on the proponent of ·the evidence to prove capacity by a preponderance of the evidence. [Emphasis added.]

Although this case is factually distinguishable, the analysis of the cognitive capacity possessed by a hearsay declarant was found to be vested within the discretion of the trial court.

testimony and understanding the importance of giving truthful testimony.

The court considers several factors in evaluating the relative maturity of a child witness when deciding if that child should be found competent to testify at trial. However, a finding of competency would not be considered a replacement for the inquiry required for determining whether the cognitive ability necessary for a self-interest motivation factor to exist was, in fact, possessed by the declarant at the time the statement was made, for purposes of MRE 803(4). Unlike the majority, I would limit the analysis to be undertaken by the court to those circumstances surrounding the giving of the hearsay statement and not include extrinsic corroborating evidence of the statement's trustworthiness.[14]

The Legislature and this Court have indicated that there is always cause for concern associated with any statements that have been made by children of tender years, even in the non-hearsay evidence situation, and that the admissibility of such statements is to be permitted only where the requisite level of competency has been sufficiently established. In light of this general concern re-

[14] Factors that could be considered in determining whether the necessary cognitive connection was present, under this analysis, would include: a) the age of the declarant at the time the hearsay statement was made; b) the relative maturity and capacity of the declarant at that time; c) the manner in which the information was elicited from the declarant; d) the circumstances under which the declarant was seeking medical care; e) the extent to which the medical care provider, or other person, conveyed the importance for accurate and truthful information to the declarant; f) the nature of the statements in relation to the medical care sought; g) any other factors which would assist the court in determining the extent of the declarant's cognitive ability at the time of making the hearsay statement. These factors would be considered only as they relate to the ability of the declarant to make the necessary cognitive connection for establishing the existence of a self-interest motivation, rather than evaluating the perceived truthfulness of the statements, as done by the majority's totality of circumstances approach.

garding statements by children of tender years, I would require that the party seeking the admission of hearsay statements by such a declarant, pursuant to MRE 803(4), have the burden of establishing the existence of the necessary self-interest motivation factor. Absent a sufficient showing by the proponent of such testimony regarding the cognitive ability possessed by the child declarant, MRE 803(4) would be unavailable in that instance.

I believe that requiring a sufficient showing of cognitive ability would be consistent with the policy rationale underlying MRE 803(4), since *it is questionable,* at best, that a child of tender years would understand the relative need to give accurate and truthful information to a medical care provider. To most children, a medical care provider represents a person who inflicts pain rather than alleviates it. A child of tender years would more likely attempt to avoid having to endure temporary but painful or distasteful actions, such as receiving inoculations or taking medicine, without concern for the long-term consequences. *State v Boston, supra.* An adult generally seeks medical care on personal initiative, whereas children are generally taken to a medical care provider, frequently under protest, by an authority figure, a parent, a teacher, a police officer, or a foster parent. Adults generally have no need to respond to questioning by a medical care provider in a manner that they believe would please any particular person accompanying them. Children, in contrast, may perceive a need, or responsibility, to respond to questioning by a medical provider in a manner that is perceived to be pleasing to the authority figure who accompanies them.

If a sufficient showing of cognitive ability was adequately demonstrated, the policy rationale underlying MRE 803(4) would be satisfied, and the

statements would be admissible if the remaining requirements of that hearsay exception are also found to have been satisfied. I would find that the burden of proof required for a sufficient showing of cognitive ability would become more difficult as the age of the declarant decreased.

B

The majority has concluded, although with minimal analysis, that the hearsay statements in these three cases, including identification of the defendants as the assailants, constitute descriptions of the general character of the cause or external source that is responsible for medical treatment being sought.[15] See *ante,* p 330. Although I would agree that statements of identity *may be* considered a description of the external source for purposes of applying MRE 803(4), a more thorough analysis of this matter is mandated in light of the following passage from *People v LaLone,* 432 Mich 103, 111; 437 NW2d 611 (1989).

> However, while the drafters of the rule clearly intended to go beyond the common law, we do not believe that they intended that the victim's naming of her assailant should be considered a description of the *"general character of the cause or external source"* of an injury. [Emphasis added.]

This passage would seem to preclude statements of identification from being classified as a description

---

[15] The majority also indicates in passing that statements of identification may be descriptions of the pain associated with the alleged sexual assaults in these cases. See *ante,* p 329. I find this statement to be unpersuasive since statements describing pain would not include a description of a physical assault; rather, they include a description of feelings of soreness or tenderness experienced by the declarant in different parts of the body. The majority, without analysis, has expanded the interpretation of this component of MRE 803(4) in a significant manner.

of the external source, which the majority rejects out-of-hand, and must be thoroughly evaluated to prevent confusion in future applications of MRE 803(4).

I would find that this conclusion from *LaLone* was in response to both the hearsay identification and the fact that the statements of identification were made to a psychologist rather than a treating physician. The combining of the terms "general character of the cause" with that of the "external source" was unnecessarily overbroad to the facts of that case, in my opinion, and inattentive to the differences between those separate and distinct terms. I would continue to adhere to the holding from *LaLone* that a description of the "general character of the cause" does not include statements of identity; however, such a restrictive interpretation would not be placed upon a description of the "external source." It is a fact that statements describing an external source often require some type of identification, while the "general character of the cause" does not necessarily require identification. However, my reading of the majority opinion leaves this issue essentially unresolved and could result in confusion for the lower courts in attempting to properly apply the majority's adopted standard consistently with that of *LaLone*.[16]

---

[16] Finally, I would stress that if identification of the assailant is to be admissible pursuant to MRE 803(4), as a description of the external source, it must be sufficiently related to the rendering of "medical treatment or diagnosis in connection with treatment" in order to come within that hearsay exception. Therefore, a victim must be able to describe the person with sufficient accuracy, such as by name or by description of the place of residence, so that the information may be considered reasonably necessary for purposes of medical treatment or diagnosis in connection with treatment. However, if the victim is only able to give a general description of the assailant, such as the assailant's height or race, that information is not reasonably necessary for purposes of medical treatment or diagnosis in connection with treatment. See *United States v Narciso,* 446 F Supp 252 (ED Mich, 1977).

C

The majority advances several explanations for finding statements of identification to be "reasonably necessary" in child sexual abuse cases.

The following uses of the statements of identification are considered to create a reasonable necessity for the medical care provider to obtain such information:

> Identification of the assailant *may* be necessary where the child has contracted a sexually transmitted disease. It *may* also be reasonably necessary to the assessment by the medical health care provider of the potential for pregnancy and the potential for pregnancy problems related to genetic characteristics, as well as to the treatment and spreading of other sexually transmitted diseases such as syphilis and gonorrhea. [*Ante,* p 328. Emphasis added.]

Although the examples cited *may* be an indication of the "reasonable pertinency" for the identity of the assailant to be disclosed to the medical care provider, any analysis regarding "reasonable necessity" by this Court, on the state of these records, is pure speculation and conjecture due to the lack of any expert medical support in the cases presented or in the analysis employed.[17]

In none of these cases have we been presented with a sufficient record to make an informed decision regarding the medical necessity of identifying the perpetrator of the assault for purposes of

---

[17] It must be noted that MRE 803(4) does require the information to be *reasonably necessary* for purposes of medical care, whereas most other jurisdictions, and FRE 803(4), merely require *reasonable pertinence* for admissibility. This is a difference that was intentionally crafted into MRE 803(4) when that hearsay exception was adopted. Therefore, we should not take lightly this heightened burden, which must be satisfied for admissibility of hearsay statements pursuant to MRE 803(4).

medical treatment, or diagnosis in connection with treatment, of sexually assaulted or abused children. I note that in each of these cases, the examining physician, when asked on direct examination, testified in a conclusory fashion that the request for the identity of the abuser was for the purpose of medical treatment. Such a conclusory statement by a medical person without further explanation regarding the medical necessity for the information, especially relating to statements of identity, would not, in my view, satisfy this requirement.

Additionally, the majority asserts that identity is reasonably necessary in order to "prescribe the manner of treatment" for "psychological trauma experienced by a child who is sexually abused" and that "[a] physician should also be aware of whether a child will be returning to an abusive home." *Ante,* p 329. These identical theories of reasonable necessity for purposes of medical treatment were expressly rejected by this Court in *LaLone,* where we stated:

Thus, statements made in the course of the *treatment of psychological disorders may not always be as reliable* as those made in the course of the treatment of physical disorders. [*Id.* at 110. Emphasis added.]

To read the exception to provide for such hearsay, particularly in the *context of psychological treatment,* would clearly broaden the nature of the exception beyond the scope intended by its drafters. [*Id.* at 111. Emphasis added.]

Thus, although we recognize that the patient's assertion of the identity of the assailant is *relevant to psychological treatment, it has not been shown that the reliability of the complainant's statement reaches the level necessary to fall*

*within MRE 803(4). In addition, we do not believe
that a physician's reliance on the victim's state-
ments in order to take protective action is of the
sort envisioned by the drafters of MRE 803(4).* The
rule is most specific in limiting the exception to
"medical treatment or medical diagnosis" or other
information "necessary to such diagnosis or treat-
ment." *It did not leave room for speculation on
hearsay which may indeed be reliable and useful
for other kinds of treatment for the victim, such as
security from further criminal activity.* It is natu-
ral and appropriate that a psychologist *or physi-
cian* confronted with such accusations take imme-
diate measures to protect the child even if it is not
certain that actual abuse occurred. The determina-
tion as to the occurrence of abuse can be reëvalu-
ated after protective measures have been taken.
[*Id.* at 114. Emphasis added.]

An attempt is made by the majority to distinguish
these cases from the situation that existed in
*LaLone.*

> Our holding in *LaLone* does not preclude this
> result because *LaLone* involved statements made
> during a psychological examination, rather than
> psychological treatment resulting from a medical
> diagnosis. [*Ante,* p 329.]

However, our decision in *LaLone,* quoted above,
clearly indicates that statements made for pur-
poses of psychological treatment, whether made to
a physician or a psychologist, are not the type of
hearsay statement intended to be within the appli-
cation of MRE 803(4) since they are not reasonably
necessary for purposes of "medical treatment" and
do not possess sufficient reliability. A similar dis-
tinction regarding the need for the physician to
know whether the child will be returning to an
abusive environment is not persuasive because
that was also not considered information reason-

ably necessary for purposes of medical treatment in *LaLone.* Therefore, the majority has attempted to resurrect arguments regarding the reasonable necessity of statements of identification for purposes of MRE 803(4) that were previously rejected in *LaLone,* and any distinction that is asserted is not sustainable.

. Accordingly, I find it inappropriate for this Court to express an opinion regarding the reasonable necessity of statements of identity in these three child sexual abuse cases in light of the inadequacy of the records on this issue.

I feel compelled to note that identification of a child sexual assault assailant by any health care provider is exceedingly important, even if there are severe questions regarding the genuineness of the allegations, as evidenced by the statutory reporting requirement imposed upon such persons. See MCL 722.623; MSA 25.248(3). It is quite probable that most successful prosecutions for child sexual abuse, or for any child abuse, had as their beginning a report, filed with the appropriate authorities, based upon hearsay statements by the child or some other observer. This is an important and vital aspect of the investigation of these types of cases; however, the importance of this information for purposes of investigation should not be allowed to dictate the manner in which we construe our rules of evidence for purposes of prosecution. We have an established set of rules that must be followed regardless of the importance of the evidence as it is utilized for investigative purposes. I do not believe that adoption of the approach to which I subscribe would reduce the active role that health care providers currently have in the investigation of these heinous crimes;. however, the extent to which the medical care providers are permitted to testify at trial must be evaluated in a

manner different from that employed for purposes of investigating such allegations.

V

Applying the approach that I would adopt, the cases currently before us would be resolved as follows.

I would find that the statements by each of the complainants to the medical care provider were made in connection with the rendering of medical treatment or diagnosis in connection with treatment. The complainants had been taken to a medical care facility by an authoritative parental figure, there were observable physical symptoms that required medical attention, and physical examinations were, in fact, performed.

Since each complainant was under ten years of age, i.e., of tender years, at the time the hearsay statements were made to the medical care providers, each prosecutor would be required to sufficiently establish that the declarant in each case was capable of making the necessary cognitive connection to possess the self-interest motivation factor for MRE 803(4). For that reason, I would determine, as best I could from the record, whether there was sufficient evidence to establish that these children did possess sufficient cognitive ability to understand the need for communicating truthful information to a medical care provider in order to receive proper medical care. After examining the circumstances surrounding the giving of each declaration in these cases, I would find that insufficient evidence existed to find the presence of such a cognitive connection.

The complainant in *Meeboer* was six years old when she identified the defendant as the sexual assailant in response to the physician's inquiries.

Statements from a child of such a young age would create, under my approach, a high burden for the prosecution to sufficiently establish that the declarant possessed the necessary cognitive ability. The physician in this case indicated that the complainant appeared to be a "relaxed young lady" when the vaginal examination was performed; however, there was no determination regarding the relative maturity of the child. The complainant was referred to the physician by the hospital after it was disclosed that sexual abuse had occurred. There is no indication in the record that the medical care provider in this case brought to the complainant's attention the vital importance of giving truthful and accurate information.[18] Nor was there any explanation of the medical necessity for the physician to know the identity of the abuser. In the absence of sufficient evidence in the record to establish the existence of the necessary cognitive ability, I would hold the hearsay statements made by the complainant to the medical care provider not to be within the application of MRE 803(4).

In *Craft,*[19] the complainant was four years old at the time she made the out-of-court statements to

---

[18] Although a medical care provider is not required to impress the importance of giving truthful information, the presence, or lack of, such a communication is an extremely relevant consideration.

In some cases, the special assurance of reliability—the patient's belief that accuracy is essential to effective treatment—also applies to statements concerning the cause. Moreover, *a physician who views cause as related to diagnosis and treatment might reasonably be expected to communicate this to the patient and perhaps take other steps to assure a reliable response.* [2 McCormick, Evidence (4th ed), § 277, p 247. Emphasis added.]

[19] Although the majority finds that the hearsay statements made by the complainant in this case do not come within the application of MRE 803(4), I include an analysis of this case that would be employed if my approach were to prevail.

the medical care provider. The age of the complainant would set an extremely high burden on the prosecution in order to sufficiently establish the necessary cognitive ability that would be required under my approach. The relative lack of maturity and capacity on the part of complainant was clearly demonstrated by her answers to the questioning by the trial court in establishing competence to testify. The complainant's answers demonstrated she did not possess a recognition of the need to testify truthfully at trial. Such a demonstration of knowledge may reflect a similar lack of capacity to understand the need for truthful information to be given to a medical care provider to receive proper medical care. As in *Meeboer,* there was no effort to educate the complainant regarding either the medical need for the identity of the abuser or to any connection between the information disclosed and complainant's well-being; although not a requirement, I would consider it an important factor in evaluating cases involving declarants of extremely young ages.

Under the best of circumstances it would be difficult, though not impossible, to demonstrate that the necessary cognitive ability was possessed by a child of such a young age to comply with the requirements of MRE 803(4). I would find that the circumstances surrounding the examination of this particular child do not begin to meet that difficult burden. Thus, I would find that the hearsay statements to the medical care provider in *Craft* were not admissible pursuant to MRE 803(4). The majority appears to accept that hearsay statements by a four-year-old child may not possess sufficient reliability to be admitted even under the totality of circumstances approach.

In *Conn,* the complainant was seven years old at the time she made the out-of-court statements to

the doctor. This creates a reduced burden upon the prosecution than in the other two cases to sufficiently establish the necessary cognitive ability. The relative maturity and capacity of this complainant was not established at trial, but does not appear to be beyond that which is normal for her age, on the basis of her trial testimony. The fact that the declarant gave three conflicting answers to the medical care provider to the question who abused her, while not controlling, certainly does not help refute the premise that a child does not naturally connect truthful answers with her physical well-being. The majority seems to indicate that this factor actually enhances the reliability of the complainant's statements because the identification of the defendant as the assailant came after complainant's mother allegedly instructed complainant to be truthful. I do not believe that giving three different versions should be considered as lending reliability to hearsay statements, regardless of the approach that is adopted. The fact that this seven-year-old was so susceptible to pressures from her closest authority figure is evidence, in my opinion, that any hearsay statements from that declarant are of questionable reliability or trustworthiness. Such susceptibility to external pressures, even while seeking medical treatment, is further evidence of the limitations regarding the rationale underlying MRE 803(4) when applied to children of tender years. Additionally, as in the previous cases, no effort was undertaken to apprise this complainant of the necessity for the information communicated to be truthful to receive proper medical care; while I concede that such a factor is not mandated by my approach, it is a significant evaluation. I would find that insufficient evidence establishing the existence of the necessary cognitive ability was presented in this case, thereby

precluding use of MRE 803(4) to admit the complainant's hearsay statements to the medical care provider.

## VI

Accordingly, I would find that the circumstances surrounding the giving of the out-of-court statements by each of the complainants in these cases do not sufficiently establish that the necessary cognitive ability was possessed by these child declarants; thus, the hearsay statements to the medical care providers would not be admissible pursuant to MRE 803(4). I would reverse the decision of the Court of Appeals in *Meeboer,* and affirm in *Craft* and *Conn.*[20]

CAVANAGH, C.J., and LEVIN, J., concurred with BRICKLEY, J.

[20] For reasons that are unnecessary to detail, in view of my status as a dissenter, I would find that the erroneous admission of these hearsay statements pursuant to MRE 803(4) was not harmless error.