*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON LAVELL PARR,

        Defendant-Appellant.

UNPUBLISHED
January 17, 2019

No. 341539
Kalamazoo Circuit Court
LC No. 2017-000431-FH

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of second-degree child abuse, MCL 750.136b(3), and two counts of assault with a dangerous weapon (felonious assault), MCL 750.82. He was sentenced as a second-offense habitual offender, MCL 769.10, to 4 to 15 years' imprisonment for the child abuse conviction and to a concurrent prison term of 1 to 6 years for the felonious assault convictions. We affirm.

Child Protective Services investigated a complaint that defendant had physically abused his stepdaughters, 11-year-old KW and 10-year-old AW. The two girls were interviewed in order to obtain their medical histories by a nurse at the Bronson Child Advocacy Clinic. The children informed the nurse that, as punishment, defendant and their mother beat them on their backs, legs, arms, and hands with a belt, along with making them sit for prolonged periods at a table in the laundry room and forcing them to stand while holding canned foods up in the air. Following the interviews, KW and AW were examined by a child abuse pediatrician at Bronson Children's Hospital, who opined that the girls had suffered injuries from severe beatings. The doctor observed bruising on the girls, was able to detect by palpation hematomas underneath their skin, and noticed tissues in various stages of healing. The doctor also found that KW had broken bones in her hands.

At trial, the girls testified regarding severe beatings and punishment inflicted by defendant, which intensified if they resisted. The testimony of the girls' stepbrother corroborated their accounts of beatings with the belt and other punishments. The girls' maternal grandmother testified that AW informed her that defendant had beaten her. AW raised her shirt

to show her grandmother, who observed bruising from halfway up AW's back to down below her pants on her upper buttocks. The grandmother had also seen other injuries on the children over the course of time. Defendant testified on his own behalf, admitting that he punished the girls with a belt numerous times but defending on the grounds that he believed that a parent should not spare the rod. Defendant's attorney argued in closing that defendant "had a good-faith and honest belief that it would benefit the children to discipline them using corporal punishment." Defendant generally described his disciplinary actions as being much less severe or harsh than that characterized by the girls, and he denied ever striking them in a violent manner. The jury found defendant guilty of second-degree child abuse and two counts of felonious assault. He now appeals as of right.

Defendant first argues that trial counsel was ineffective for failing to object to the nurse's testimony regarding the children's statements made to the nurse, given that the testimony constituted hearsay, which did not fall within the parameters of the hearsay exception for statements made for purposes of medical treatment or diagnosis, MRE 803(4). Defendant maintains that the statements made by the girls did not relate to current injuries and that many of the statements were far afield of having anything to do with obtaining medical treatment. Defendant further complains that the children were brought to the nurse and doctor to determine whether to bring charges, not to obtain medical treatment.

We first question whether the nurse's testimony regarding statements made by AW and KW constituted hearsay. "A statement is not hearsay if . . . [t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication . . . ." MRE 801(d)(1)(B). The girls both testified, they were subject to cross-examination, and the statements made to the nurse were consistent with the testimony of the declarants, i.e., AW and KW. In defendant's opening statement, counsel observed, "Why would kids lie? Well, these are kids; and kids, I would say, don't like to be disciplined." Therefore, there was an express charge of fabrication. However, under MRE 801(d)(1)(B), "a consistent statement made after the motive to fabricate arose does not fall within the parameters of the hearsay exclusion for prior consistent statements." *People v Rodriguez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996). If the girls had a motive to lie and, assuming a motive to fabricate, if it arose before the statements were made to the nurse, only then would MRE 801(d)(1)(B) not be implicated. Regardless, even if the nurse's testimony concerning the statements was hearsay and escaped MRE 801(d)(1)(B), the exception under MRE 803(4) applied.

MRE 803(4) provides a hearsay exception in regard to the following statements:

> Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

In *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992), our Supreme Court discussed MRE 803(4), stating:

-2-

In order to be admitted under MRE 803(4), a statement must be made for purposes of medical treatment or diagnosis in connection with treatment, and must describe medical history, past or present symptoms, pain or sensations, or the inception or general character of the cause or external source of the injury. Traditionally, further supporting rationale for MRE 803(4) are the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient. The trustworthiness of a child's statement can be sufficiently established to support the application of the medical treatment exception.

Part of defendant's argument is that "[t]here was never any allegations that [KW] and [AW] were currently suffering from any injuries" when they met with the nurse. However, MRE 803(4) allows for the admission of statements describing "past or present symptoms." Moreover, MRE 803(4) encompasses statements explaining "the cause or external source" of injuries. The girls' statements to the nurse explaining the cause or source of their injuries—defendant's whippings—fell cleanly within the boundaries of MRE 803(4).

As part of its analysis under MRE 803(4), the *Meeboer* Court proceeded to discuss the issue of trustworthiness and statements made by children, observing:

While the inquiry into the trustworthiness of the declarant's statement is just one prong of the analysis under MRE 803(4), it is very important that the understanding to tell the truth to the physician be established. Factors related to trustworthiness guarantees surrounding the actual making of the statement include: (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Meeboer*, 439 Mich at 324-325 (citations omitted).]

In this case, the investigating detective scheduled an interview and examination at the Children's Advocacy Center in light of the complaint of child abuse. The forensic examination occurred three months before the prosecution charged defendant. The record reflects that the nurse interviewed the children to obtain their medical histories in preparation for the pediatrician's examination. The nurse did not record her interview of the victims. She testified that she interviewed the children to assist the doctor. The nurse talked with KW and AW separately. And each of the girls told the nurse about the beatings that occurred to them in the

family home. KW and AW independently identified defendant as the person who had abused them, providing details of the severe physical punishment inflicted by defendant. The record does not indicate that KW or AW had a motive to fabricate the statements made to the nurse. The girls' description of the abuse was consistent with the pediatrician's medical examinations of each child. The medical history obtained by the nurse assisted the doctor in treating and diagnosing the injuries sustained by each of the girls.

In light of the record, we conclude that the statements made by KW and AW had the requisite trustworthiness for their admission via the nurse's testimony. Because the nurse's testimony regarding the statements made by the girls was admissible, defense counsel's performance in failing to object to the evidence was not constitutionally deficient, given that it did not fall below an objective standard of reasonableness. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001); *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). Moreover, failing to advance a meritless argument or to raise a futile objection does not amount to ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Additionally, assuming that the nurse's testimony was inadmissible and that counsel's performance was deficient in not objecting to the evidence, defendant simply cannot establish the requisite prejudice for purposes of his claim of ineffective assistance of counsel. *Carbin*, 463 Mich at 600. There was no dispute at trial that defendant used a belt to strike the girls. The dispute focused on the extent and severity of defendant's use of the belt. Aside from the nurse's testimony, the testimony of the girls was also supported by the testimony of their grandmother, the doctor, and the girls' stepbrother. The doctor testified to some of the very same statements made by the girls to the nurse, and defendant raises no challenges to the doctor's testimony. Indeed, it was the doctor's testimony regarding the nature and extent of the injuries that effectively corroborated the girls' description of violent and severe beatings at defendant's hands. Absent the nurse's testimony regarding the statements made by AW and KW, the outcome would have been no different. Reversal is unwarranted.

Defendant next argues that he is entitled to resentencing because the trial court erred in assessing a couple of the offense variables (OVs). We disagree. Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). Clear error arises when the appellate court is left with a firm and definite conviction that an error occurred. *People v Fawaz,* 299 Mich App 55, 60; 829 NW2d 259 (2012). This Court reviews de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy,* 494 Mich at 438; see also *Rhodes*, 305 Mich App at 88. In scoring OVs, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). The trial court may consider victim impact statements in scoring OVs. See *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012).

Defendant argues that the trial court erred in assessing 10 points for OV 14. With respect to OV 14, 10 points must be assessed if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). "[T]he plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of

a group." *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880 (2013). A leader is one who leads another, as by "guiding, preceding, showing the way, directing, or conducting." *Rhodes*, 305 Mich App at 90.

In this case, witnesses testified that defendant and his wife, a codefendant, physically beat KW and AW with a belt. Testimony reflected that defendant took over beating the children when his wife did not do it to his liking. Testimony further established that defendant instructed his wife how to beat the children and punish them. This evidence adequately supported the 10-point score for OV 14.

In a Standard 4 brief, defendant maintains that the trial court erred in assessing 10 points for OV 4 because it relied on judicial fact-finding, focusing on victim impact statements. For purposes of OV 4, 10 points must be assessed when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The trial court sentenced defendant under sentencing guidelines that were treated as advisory per *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). And "judicial fact-finding is proper, as long as the guidelines are advisory only." *People v Biddles*, 316 Mich App 148, 159; 896 NW2d 461 (2016). Accordingly, the trial court did not err by engaging in judicial fact-finding when scoring OV 4.

To the extent that defendant is also arguing that the record did not support the 10-point score for OV 4, we reject the argument. A court must "[s]core 10 points if the serious psychological injury may require professional treatment." MCL 777.34(2). "[T]he fact that treatment has not been sought is not conclusive." *Id.* Evidence of depression, personality changes, or traumatic feelings can support a score of 10 points for OV 4. *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013). Evidence of fear while a crime is being committed, by itself, is insufficient to assess points for OV 4. *People v White*, 501 Mich 160, 164-165; 905 NW2d 228 (2017).

The testimony of the girls revealed that they suffered psychological trauma from the repeated beatings inflicted by defendant. Furthermore, the children's grandmother provided a victim impact statement, reporting that the girls suffered post-traumatic stress disorder as a result of the beatings and were receiving therapy. She also reported that the children suffered from violent nightmares. KW and AW each submitted children's victim impact statements wherein they reported sadness, anger, and fear. KW wrote that she suffered from stress. In light of the evidence, there was no error by the trial court, clear or otherwise, in assessing 10 points for OV 4.

Finally, defendant argues that he should be resentenced absent the habitual offender enhancement, considering that the prosecution failed to provide him with timely notice of its intention to seek enhancement of his sentence. MCL 769.13 provides, in pertinent part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Defendant waived his right to a preliminary examination and was bound over to the circuit court on May 10, 2017. The felony information was filed on May 16, 2017. The lower court file contains an habitual offender notice that was filed on May 16, 2017, along with a proof of service indicating that the notice had been mailed to defendant on May 15, 2017. Although the record does not contain a document regarding a circuit court arraignment or a waiver thereof, we can safely surmise that the arraignment or waiver occurred on or after May 10, 2017, when the case was bound over to the circuit court. Whether there was an arraignment or whether it was waived, in which case the date of the felony information would control, the notice was filed and served within the 21-day period; there was full compliance with MCL 769.13.

Defendant's argument is premised on the fact that he had been arraigned on the complaint in the district court on March 23, 2017. However, in *People v Richard*, 315 Mich App 564, 588-589; 891 NW2d 911 (2016), rev'd in part on other grounds 501 Mich 921 (2017), this Court held that the reference to an "arraignment" in MCL 769.13 pertains to the circuit court arraignment, not the arraignment in district court. Accordingly, defendant's argument fails.[1]

We Affirm.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[1] Moreover, at sentencing, defendant expressly informed the trial court that he did not dispute the enhancement, thereby waiving the issue. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).